## WASHBURN *vs.* COOKE.

Malice is implied from the making of a slanderous charge, or a libellous publication But if it appear that the words were spoken, or the publication made, upon a *just occasion,* the communication is privileged, and express malice must be shown in order to maintain an action.

Classes of privileged communications enumerated.  *Per* BRONSON, C. J.

Where a sheriff, having levied upon certain cattle which were subsequently driven away, employed the defendant, a student at law, to ascertain the facts and advise him what to do, who afterwards wrote to the sheriff that he had ascertained that the plaintiff had been seen driving off the cattle, and he had no doubt but that the taking was felonious, and advised him to prosecute the plaintiff for larceny ; *held* a privileged communication for which an action would not lie without proof of actual malice.

ACTION for libel, tried at the Otsego circuit, in September, 1844. The plaintiff proved that he usually went by the name of Nelson Washburn ; that he lives in Butternuts ; and was, and for several years past had been, a cattle drover : that the defendant resides at Oneonta, and is a student at law ; and that Amos Winsor, the sheriff of the county, resides at Cooperstown. He further proved that some cattle, upon which the sheriff had made a levy, had been driven off in the summer of 1843. The plaintiff then gave in evidence a letter written by the defendant, and directed on the outside to "Amos Winsor, Esq., Cooperstown ;" which letter was as follows :—

"Oneonta, Saturday Morn.

Dear Sir,—Mr. Doolittle and myself have just returned from Otego, and succeeded in finding two or three ploughs, one grindstone, one two horse wagon, a good plate stove, and one chain, all of which is in safe keeping, and advertised to be sold on the 24th instant. We have advertised, in addition, 1 one

horse wagon, and 1 one horse harness. Hoag has just hove in, and succeeded in tracing the cattle and one horse, which passed through the turnpike gate, two miles this side of Gilbertsville, Saturday morning at half past one o'clock. The woman at the gate house noticed the cattle particularly, and knew the persons that were driving them, being Nelson Washburn and David Nash, the one-armed man. Hoag thinks the cattle have gone to Philadelphia, and that they will meet John Blakely there, and says you had better go by rail-road and water to Philadelphia and Westchester, where the cattle probably are, yourself, as you, he thinks, can do the business better than himself. There can be no doubt about the cattle having gone that way, nor any doubt that Nelson Washburn and David Nash were the persons that drove them through the gate, although Washburn is now at home, and probably sent Nash on with the horse and cattle alone, with directions where to drive them. Hoag thinks you can easily find them, and that you will most likely meet old John on the route at some place. I think so too, although I think you could do a very fair business by arresting Washburn and Nash for stealing, as there can be no doubt but that the cattle were feloniously taken. I throw out these hints in a hurry. You will do as you think best. Write me if you desire me to execute any particular business. I will keep my eye ahead and let you know all that I can discover. In haste,

WOODBURY R. COOKE."

The letter was received by Sheriff Winsor in August, 1843, who showed it to his attorney and counsel, and to no one else. The letter was afterwards thrown aside as waste paper, and was found in an out house on the sheriff's premises, and this suit, and another in favor of Nash, were afterwards commenced against the defendant.

The defendant offered to prove that he was employed by the sheriff to ascertain the facts, and inform him; and to counsel and advise the sheriff what course he thought best to pursue. The plaintiff objected; and the judge, after ascertaining that the defendant was not an attorney or counsellor at law, rejected

Washburn *v.* Cooke.

the evidence. The judge charged the jury that the letter was libellous, and not a privileged communication; and that being libellous, the law implies malice so as to sustain the action; but the amount of damages was exclusively a question for the jury. The jury found a verdict for the plaintiff for $51 damages. The defendant moves for a new trial on a case.

*N. Hill, Jr.* for the defendant, cited 3 *John.* 180; 1 *T. R.* 110; 3 *id.* 61; 4 *B. & C.* 247; 1 *Camp.* 267, 269, *note ;* 7 *Car. & Payne,* 680; 5 *id.* 543; 8 *id.* 234; 2 *Moody & Rob.* 20; 1 *Denio,* 41; 2 *Stark. Ev.* 630 *to* 634, *ed. of '42* ; *Ham. N. P.* 292, *and note* (*m*); *Bull. N. P.* 8.

*R. W. Peckham,* for the plaintiff.

*By the Court,* BRONSON, Ch. J. If the letter was not a privileged communication—if there was nothing in the occasion of writing it to distinguish this from the ordinary case of making a slanderous charge against another—the judge was clearly right in his instruction to the jury. In the common case of a libellous publication, or the use of slanderous words, the charge of malice in the declaration calls for no proof on the part of the plaintiff, beyond what may be inferred from the injurious nature of the accusation. The principle is a broad one. In all cases where a man intentionally does a wrongful act, without just cause or excuse, the law implies a malicious intent towards the party who may be injured; and that is so, even though the wrongdoer may not have known at the time on whom the blow would fall. But in actions for defamation, if it appear that the defendant had some just occasion for speaking of the plaintiff, malice is not a necessary inference from what, under other circumstances, would be a slanderous charge; and it will often be necessary for the plaintiff to give other evidence of a malicious intent. There may be many of these privileged communications; as where the charge is made in giving the character of a servant; or in a regular course of discipline between members of the same church; in answering an inquiry concerning the

Washburn *v.* Cooke.

solvency of a tradesman, or banker; or where the communication was confidential, between persons having a common interest in the subject to which it relates. In these, and other cases of the same nature, the general rule is, that malice is not to be inferred from the publication alone. The plaintiff must go further, and show that the defendant was governed by a bad motive : that he did not act in good faith, but took advantage of the occasion to injure the plaintiff in his character or standing. These principles are sufficiently exemplified in the cases cited by the defendant's counsel.

In this case, it may be collected from the evidence given, and that which was offered and rejected, that the sheriff had made a levy upon certain cattle, which had afterwards been wrongfully driven away, in consequence of which the sheriff was likely to suffer damage : that the sheriff thereupon employed the defendant to ascertain and inform him of the facts in relation to the wrong which had been done, and to advise what course it was best to pursue : and that the defendant wrote the letter in question to his employer, concerning the subject matter of his employment. It was the communication of an agent to his principal, touching the business of his agency, and not going beyond it. The charge of larceny, of which the plaintiff complains, was directly pertinent to the matter in hand; and I think the letter must be regarded as a privileged communication. The occasion upon which it was written sufficiently rebuts the inference of malice, which, under other circumstances, would have arisen from the injurious nature of the charge. In such a case, although there may be no proof of the truth of the accusation, and even though it may be shown to be false, the jury are not to render a verdict for the plaintiff as a matter of course. They must first be satisfied, on looking at the whole case, that the defendant did not act honestly and in good faith, but intended to do a wanton injury to the plaintiff.

Although the defendant was neither an attorney nor counsellor at law, he may have been quite competent to ascertain the facts concerning the driving off of the cattle, and to ex-

press an opinion upon the question whether the taking was felonious.

It follows from what has been said, that the evidence offered by the defendant should not have been rejected.

New trial granted.