TAYLOR, HALE and MURDOCH *against* CHURCH.

In an action for a printed libel, it is proper to admit evidence of what was said by the defendant in directing the printing, in order to disprove actual malice in the publication, and to influence the question of damages.

One who undertakes for an association of merchants in New York to ascertain the pecuniary standing of merchants and traders residing in other places, who are customers of some of the members of the association, and who furnishes reports to all the members of the association irrespective of the question whether they have an interest in the question of the standing of such merchants and traders, is liable for any false report made by him prejudicial to the credit of the subject of it, although made honestly and from information upon which he relied.

This was an action for a libel brought in the New York court of common pleas. The plaintiffs were merchants at Columbus, Mississippi, purchasing goods at New York and receiving from New York merchants, goods to sell at Columbus on commission. In the complaint they alleged that the defendant caused to be printed and published in the city of New York a libel upon them in the following words:

" Taylor, Hale & Murdoch, Columbus, Miss. This concern does not seem to thrive here. M. is capable in some respects, but is not a successful manager. He is remarkably systematic and particular in details, and a superior office clerk, but lacks the other and more essential requisites of a good merchant. H. is rather a negative character. Taylor resides in N. Y. and sends out undesirable, ill assorted odds and ends, and unsaleable stock. He was formerly with Beri. King, and I am told is an unprincipled character."

There was another publication claimed to be libelous alleged, but no proof was given to sustain the allegation. The defendant in his answer denied the printing and pub-

lication.  He stated that for several years he had been
employed by several mercantile firms doing business in the
city of New York, to travel in Mississippi and there ascer-
tain by inquiry the pecuniary standing and credit of
merchants in that state who were debtors of some one or
more of those firms, or who had applied to them for credit:
that he was usually furnished with the names of the
persons concerning whom he was to make inquiry: that in
discharge of his duties, in February, 1846, he wrote a
private and confidential letter to Wolfe & Gillespie, one
of the firms employing him, which contained the supposed
libel: that at the time he sent the letter he was unac-
quainted with either of the plaintiffs, and had never to his
knowledge seen them: that his letter was written in the
discharge of his special and confidential duties as agent of
his employers, and without malice, and from information
obtained at the time from sources entitled as he believed
to implicit confidence, and that the statements contained
in it he believed true, and he insisted that it was a privi-
leged communication.

The plaintiff replied that the defendant published the
libel maliciously: that it was written with the intention
of publishing it, and that it was not contained in a privi-
leged communication.

The action was tried in February, 1851.  The following
facts appeared:  In 1842, several mercantile firms in the
city of New York associated together to employ the defend-
ant to travel in the southern and western states, to obtain
information in relation to the standing of merchants and
traders residing there.  The information was transmitted
in the form of reports to the firm of Wolfe & Gillespie.
Robert Jaffray was the chairman, treasurer and director of
the association.  Originally the letters containing the
reports were sent to each subscriber to take a copy; this
took a long time; after that a young man was employed to
make copies; then to save expense and for convenience,
Jaffray proposed to have them printed; the defendant at

that time was at the south and he had nothing at all to do with the arrángement: Wolfe & Gillespie furnished the copy to Jaffray, and he had the reports printed, and distributed them to the subscribers with the understanding that they were to observe the strictest confidence concerning them. They were printed by Michael Cassidy. Jaffray engaged him to print them in 1843, and he continued to print them until 1848, making out his bills and receiving pay from Jaffray who instructed him that the reports were confidential. From January to August, 1847, Cassidy received the reports to print directly from the defendant. Upon the examination of Cassidy as a witness for the plaintiff, the counsel for the defendant asked him the following question: " When Mr. Church employed you did he request you to do this printing in as private. and confidential a way as you could?" The plaintiff's counsel objected to the question, and the court sustained the objection. He then asked him, " Was it or not agreed between you and Mr. Church, that you should do this printing in as private and confidential a manner as you could?" This was also objected to and excluded, and exceptions were taken. It was subsequently shown that seventy-five copies of the reports were printed and that they were sometimes delivered to the defendant, and that new subscribers to the association in several instances were furnished with the reports previously printed. The whole number of subscribers was from thirty to thirty-seven persons.

On the part of the defendant, it appeared that the report in which the libel in question was contained, was printed in 1846, by order of Jaffray, and that the defendant had nothing to do with the printing of the reports in that year.

After the testimony was concluded, the defendant's counsel moved for a nonsuit on the following grounds:

1. That the publication is not actionable *per se*, and that there is no proof of any special damage to the plaintiffs.

Taylor *against* Church

2. The plaintiffs having sued as partners, can only recover damages for injury done to their partnership business and credit, and there is no proof of any such damage.

3. That upon the facts alleged in the answer, and not denied by the reply, and upon the evidence adduced, the publication proved was a privileged communication, and that therefore the plaintiffs could only maintain their action on proof of express malice, whereas no such proof had been given.

The court denied the motion, and the defendants excepted. The defendant's counsel then desired the court to charge the jury as follows:

1. That from the facts stated in the answer, and not denied by the reply, the original communication of February, 1846, complained of as libelous, was as between the defendant and all the subscribers to his reports, a privileged communication.

2. That if the jury from the evidence believe, that all and each of the persons who subscribed to the defendant's reports, and to and among whom they were distributed, were interested in obtaining information as to the standing of country merchants generally, in the states visited by the defendant, and from which he sent his reports, then that the privilege above claimed, extends to all and each of such persons.

3. That if from the evidence the jury shall be satisfied, that the printing and publication of said communications testified to by the witnesses, was for the more convenient distribution of the printed copies thereof, among the merchants doing business in the city of New York, who in the year 1846, were, or who afterwards should become subscribers, to the defendant's reports, then that such printing, and publication, are within the privilege, and that no action can be maintained therefor, unless there be proof of express malice.

4. That the defendant is not responsible for the publica-

tion of the printed sheets, delivered to any of the sub-scribers by such subscriber, unless the jury shall be satisfied, that such publication was with the assent, or privity of the defendant.

5. That the plaintiffs in their character as partners, can only recover damages for the injury they have sustained in their joint trade.

The court then charged the jury in conformity with the last two propositions, but declined and refused to instruct the jury conformably to the first three otherwise than as contained in the general charge; and thereupon charged the jury, that the communication of what is inju-rious and false, although made in good faith, believing it to be true, is not privileged, if knowingly and voluntarily made to those who had not at the time an interest in the matter communicated: that the printer or compositor of the sheets, had no interest in the subject to which they relate: that if the defendant had the right to communicate all that he heard and believed to be true, to those who em-ployed him, that would not justify his imparting it to third persons; and if he voluntarily placed himself in a position, in which for convenience, a multiplication of copies of his reports became desirable, he was bound, if he made such copies at all, to do it in such a manner, that third parties having nothing to do with, and no interest in the subject, should not be thereby informed, otherwise if the commu-nication was false he was liable: that the fact that some or one of the persons who employed the defendant were interested, or that the plaintiffs were, (as alleged in the answer,) debtors or customers of some or one of them, furnished no justification for making the communication to others who had no concern therewith; and if a party voluntarily engaged in a system of espionage upon the character and conduct of others for his private gain, com-municating the result to third persons for a premium, without showing that they had any interest in knowing any thing about the particular parties whose character was

Taylor *against* Church.

aspersed, the law will not hold him protected if such aspersions are false: that if it were true, as alleged in the defendant's answer, that he was furnished by each firm who had become subscribers, with a list of merchants with whom they respectively had dealings, and this was done as a guide to him in the matter of his employment, and a designation of the particular debtors and customers of whose standing and credit they desired information, the defendant should have confined his communication to each subscriber, to matters affecting those embraced in such subscriber's instructions. And if he distributed the information, or caused it to be distributed, to parties not having an interest in the matter, not only to persons at whose instance he undertook the business, but from time to time afterwards, to whatever merchant would subscribe and pay an annual sum as a premium therefor, he was not protected by law, in communicating injurious statements not founded in truth: that if the plaintiffs were entitled to recover at all, they could not recover for any injury to their reputation as individuals, but only for the injury done to their joint interests as merchants and copartners, i. e., for damages done to the mercantile character, credit and standing of the firm, constituted as it was of three members, and for the effect produced by the publication upon them in their joint business, embracing the character of each of the partners so far, and so far only, as that entered into the mercantile reputation of the firm: that the amount of such damages, if a recovery should be had, should be a full compensation for the injury, and nothing more, unless the jury were satisfied, that the defendant was influenced by actual malice, or a deliberate intention to injure the plaintiffs; but if they were satisfied, that he was governed by such a motive, they might give not only such full compensation, but also such further damages, as, in their judgment, were suited to the aggravated character which the act then assumed, and as were necessary as an example to deter from the doing of such injuries.

SEL. IV.—58.

Exceptions were taken to the refusal to charge as requested, and also to the charge. The jury found a verdict for the plaintiff for $6000 damages, and the court in banc affirmed a judgment thereon. The defendant appealed therefrom to this court.

*B. F. Butler*, for appellant. I. The questions proposed by the defendant's counsel to the witness Cassidy should have been allowed. The evidence called for by them was pertinent and material under the issues, as to the defendant's motives in procuring the printing of the supposed libel. It tended to disprove the charge of malice. The effect of excluding it was to enable the plaintiff to give in evidence the defendant's application to and employment of Cassidy to print the reports, without the declarations which formed an integral part of the application and employment.

II. The motion for nonsuit should have been granted. The publication was not actionable by the plaintiffs in their partnership character, without proof of special damage to the partnership. The foundation of an action by partners for a libel on the firm, is the injury sustained by the firm in their joint business. (*Smith* v. *Crooker, Cro. Car.* 512; *Coryton* v. *Lithebye,* 2 *Saund.* 116, *note a* ; *Sewall* v. *Catlin,* 3 *Wend.* 291.) The only part of the publication which relates to the firm, is the clause, " This concern does not seem to thrive here." These words are not actionable *per se* They imply no want of credit or responsibility in the firm, and there is no innuendo giving them such a meaning. What is said of Murdoch and Hale respectively does not disparage either of them in regard to their honesty, credit or the quality of their wares. (1 *Den.* 250, *Van Tassel* v. *Capron.*) The words written of Taylor do not *per se* furnish a ground of action in favor of the firm.

The letter containing the supposed libel was *prima facie* a privileged communication, and to make it the ground of an action express malice should have been proved. There was no proof of any

III. The court erred in charging the jury that if satisfied that the defendant was governed by actual malice they might give vindictive damages.

*C. B. Smith,* for respondent.

Jewett, J. — The only ground of the action, after the second count of the complaint was struck out, was, for the publication of the letter of February, 1846, set out in the first and third counts. The plaintiff in the first place proved by the witness Cassidy, on his direct examination, that in February, 1847, he was employed by the defendant to print this letter, and that he accordingly did it. On his cross-examination the counsel for the defendant asked the witness whether the defendant requested him to do this printing in as private and confidential a way as he could, and whether or not it was agreed between him and the defendant that it should be done in that manner. This was objected to, and the objection being sustained, an exception was taken by the counsel for the defendant.

I agree in opinion with the court below that the questions were proper. The terms and conditions on which the defendant requested the printing and publication to be done, and on which the witness agreed to do it, were admissible in evidence as a part of the *res gestæ* given in evidence by the other side. The evidence called for was pertinent and material in respect to the *motives* of the defendant in procuring the publication complained of. It tended to disprove that the defendant was influenced by *actual* malice to injure the plaintiffs by the publication, and therefore pertinent upon the question in respect to the amount of damages to be given beyond a full compensation for the injury, by way of punishment or example. But I can not agree with the court below that the defendant is precluded from availing himself of the exception, because the plaintiffs after it was taken, proved by other testimony

the publication of the same letter in 1846, at another time. I do not think that this case comes within the rule which holds that a court of review, may, under peculiar circumstances, disregard an error in the court below in the exclusion of legal, or in the admission of illegal evidence. We can not see that the exclusion in this case on its face and by legal necessity could do no injury to the defendant. (*Worrall* v. *Parmelee*, 1 *Comstock*, 519.)

I think the court below was right in holding that the publication could not be included within the protection of privileged communications. In this case the communication was not even confined to the persons making the inquiries of the defendant. The libel complained of was printed by his procurement, and distributed by him to persons who had no special interest in being informed of the condition of the plaintiff's firm.

The judge charged the jury that the damages should be a full compensation for the injury and nothing more, unless the jury was satisfied that the defendant was influenced by *actual* malice or a deliberate intention to injure the plaintiffs, but if they were satisfied of such intent, they might give "such further damages, as are suited to the aggravated character which the act assumes, and as are necessary as an example to deter from the doing of such injuries." To this there was an exception. I am of opinion that it was correct. The principle is well established as well in the English as in the American courts of justice, that in actions for injuries to the person, committed under the influence of actual malice or with the intention to injure the plaintiff, the jury in their discretion may give damages beyond the actual injury sustained, for the sake of the example — damages not only to recompense the sufferer, but to punish the offender. (*Huckle* v. *Money*, 2 *Wilson*, 205.) In *Doe* v. *Filliter*, 13 *Mees. & Welsby*, 47, Ch. B. Pollock said that in actions for malicious injuries, juries have been allowed to give what are called vindictive damages, and to take all the circumstances into consid-

eration. In *Tillotson* v. *Chatham*, 3 *Johns.* 56, the action was for a libel. The judge at the trial told the jury that the charge contained in the libel was calculated, not only to injure the feelings of the plaintiff, but to destroy all confidence in him as a public officer; and in his opinion, demanded from the jury exemplary damages, as well on account of the nature of the offence charged against the plaintiff, as for the protection of his character as a public officer, which he stated as a strong circumstance for the increase of damages: that he did not accede to the doctrine that the jury ought not to punish the defendant in a civil suit, for the pernicious effect which a publication of this kind was calculated to produce in society. The jury found a verdict for the plaintiff for $800. A motion was made to set aside the verdict, and one ground was, that the public character of the plaintiff as an officer of the government, and the evil example of libels, were stated by the judge to the jury as considerations with them, for increasing the damages. But Kent, Ch. J., said, " Surely this is the true and salutary doctrine. The actual pecuniary damages in actions for defamation, as well as in other actions for *tort*, can rarely be computed, and are never the sole rule of assessment." In cases of criminal conversation, battery, imprisonment, slander, malicious prosecutions, &c., (to use the words of Lord Camden, in 2 *Wilson*, 206,) the state, degree, quality, trade or profession of the party injured, as well as of the party who did the injury, must be, and generally are considered by the jury in giving damages;" and further, that the doctrine was too well settled in practice and was too valuable in principle, to be called in question. And Spencer, J., in the same case held still stronger language. He said in vindictive actions, such as for libels, defamation, assault and battery, false imprisonment, and a variety of others, it was always given in charge to the jury, that they are to inflict damages for example's sake, and by way of punishing the defendant.

In *Wort* v. *Jenkins*, 14 *Johns.* 352, the action was tres-pass for beating a horse to death. The judge charged the jury that if they found for the plaintiff, it was a case in which, from the wantonness and cruelty of the defendant's conduct, the jury had a right to give smart-money. A verdict was found for the plaintiff, and on a motion to set it aside for misdirection, the court held that the charge was correct.

In *Cook* v. *Ellis*, 6 *Hill*, 466, it was held in an action for an assault and battery, that the plaintiff might recover *exemplary* damages, if the jury thought proper to allow them, though it appeared that the defendant had been prosecuted criminally for the same matter, and fined $250, which he had paid. The court said that in vindictive actions, juries are always authorized to give exemplary damages where the injury is attended with circumstances of aggravation, without regard either to the possible or actual punishment of the defendant by indictment and conviction at the suit of the people.

In *Austin* v. *Wilson*, 4 *Cushing*, 273, the supreme court of Massachusetts held that if exemplary, vindictive or punitive damages were ever, in any case, recoverable, they could not be recovered in an action for an injury which was also punishable by indictment, as libel and assault and battery. For if they could be, the defendant might be punished twice for the same act. That qualification of the rule of damages in vindictive actions, was expressly denied to exist in our courts in *Cook* v. *Ellis, supra.*

In *Austin* v. *Wilson, supra,* the court cited the case of *Whitney* v. *Hitchcock*, 4 *Denio*, 461, which was an action of trespass, assault and battery upon the daughter and servant of the plaintiff, by which she became sick, &c. It appeared in evidence that the assault was of an indecent character, made under circumstances of great aggravation. The judge charged the jury that they had a right to give a verdict for an amount beyond the actual damages proved: that they were at liberty to give exemplary dama-

ges. The court on a motion for a new trial said, that the general question what damages could be recovered by way of punishment in the class of actions where exemplary damages are usually given, was not involved in that case: that that suit was brought by the plaintiff for the loss of the services of his servant, and for that he was entitled to recover, but could not recover beyond his actual loss: that the daughter might herself maintain an action, in which her damages might be assessed according to the rule laid down at the trial, and the defendant would also be liable to indictment. The cases are numerous in our courts, where, in actions for malicious injuries, juries have been instructed that they had a right to give what are called vindictive damages, and to take all the circumstances of the case into their consideration. But it can not be necessary on this occasion to cite more of them.

Most, if not all were cited by counsel in *Kendall* v. *Stone*, 1 *Selden*, 14.

The supreme court of New Hampshire, in *Whipple* v. *Walpole*, 10 *N. H.* 130, held that in actions for *tort* to the person, and to personal property, the jury might give *liberal* or *exemplary* damages, in their discretion: damages beyond the actual injury sustained, for the sake of the example. And so in *Linsley* v. *Bushnell*, 15 *Conn. R.* 225; and *Huntley* v. *Bacon*, 15 *Conn. R.* 267, the supreme court of Connecticut held that there was no principle better established and in practice more universal, than that vindictive damages or smart-money might be given by juries, whether the form of action be trespass or case. And the same doctrine is fully recognized by the supreme court of the United States. (*Tracy* v. *Swartwout*, 10 *Peters*, 81; 3 *Wheaton*, 546.) The judgment must be reversed and a new trial ordered, because of the rejection of legal evidence offered by the defendant, with costs to abide the event.

MASON, J., read an opinion in which he arrived at the

conclusion that the charge of the court below as to the rule of damages was erroneous.

The question was then put, Shall the judgment of the court below be reversed for error in the charge as to the rule of damages ? GARDINER, MORSE and MASON, JJ., were in favor of the reversal, and RUGGLES, Ch. J., JEWETT, JOHNSON and WILLARD against it.

The question was then taken, Shall the judgment be reversed on account of the rejection of the evidence proposed to be given by the witness Cassidy? RUGGLES, Ch. J., and GARDINER, JEWETT, JOHNSON, MORSE and WILLARD, JJ., voted in the affirmative. MASON, J., expressed no opinion.

The question was then taken, Was the alleged libel a privileged communication? All the members of the court who heard the argument were of the opinion that it was not.

TAGGART, J., having been absent at the argument, took no part in the decision of the cause.

Judgment reversed and new trial ordered.