While the law authorizes actions of slander to be maintained, to vindicate the reputation and character of individuals who have been wrongfully and unjustly assailed, it also upholds the principle that, in a certain class of cases, communications between individuals are regarded as privileged; and are, therefore, protected from the presumption of *Page 479 
malice which is usually to be inferred from the charge itself. Where the wrongful act is intentional, a malicious intent is implied, and the party is held responsible. But, in actions of slander, if it be made to appear that the defendant had just occasion to speak the words, then malice is not to be presumed, and some additional evidence is necessary to establish the charge. The rule is well settled, that a communication, which would otherwise be slanderous and actionable, is privileged if made in good faith, upon a matter involving an interest or duty of the party making it, though such duty be not strictly legal, but of imperfect obligation, to a person having a corresponding interest or duty (Van Wyck v. Aspinwall, 17 N.Y. 190;Harrison v. Bush, 32 Eng. C.L. Eq. 173); and this principle applies to an agent employed to procure information as to the solvency, credit and standing of another, who communicates confidentially, and in good faith, the information obtained, to his principal, who has an interest in the subject-matter. (Washburn v. Cooke, 3 Denio, 110.)
Within the rule laid down, the slanderous words for which the plaintiff seeks to recover damages in this action were clearly privileged, and the judge upon the trial committed no error in nonsuiting the plaintiff. They were communicated by the defendant, in the performance of a duty imposed upon him, to a person who had an interest in the matter, and who had a right to require the information. The communication was in response to an inquiry as to the responsibility and standing of the plaintiff, and embraced information relating to that subject. The witness had a note in his possession at the time, indorsed by the plaintiff, and there would appear to have been some necessity for making the inquiry, and some reason presented to the defendant, from which he might well infer that there was occasion for the party to obtain the information he desired. So long as the defendant acted in good faith in reporting facts which came to his knowledge, which had any bearing upon the subject of inquiry, even although the report may have contained criminatory matter, which otherwise would have been slanderous *Page 480 
and actionable, he was justified and excusable. The communication made being, prima facie, privileged, as is apparent, the presumption of malice does not necessarily arise, and the onusprobandi to establish malice is upon the plaintiff. The privileged character of the communication relieves the party from the malicious intent which is usually to be presumed from the act itself; and the action is to be regarded as governed by the same rule as an action for malicious prosecution.
The presumption of malice being rebutted, the plaintiff must establish malice affirmatively, on the part of the defendant, in uttering the alleged slanderous words. He must show that defendant was influenced by some other motives than the mere discharge of a duty, and that the communication was not made solely for privileged purposes. (Howard v. Thompson, 21 Wend. 319, 320; Somerville v. Hawkins, 3 Eng. Law Eq. 506, 507;Taylor v. Hawkins, 5 id. 253, 256, 257; Harris v.Thompson, 24 id. 370, 380, 381; 32 id. 176; 3 Denio, 113;17 N.Y. 193.)
It is said that the defendant falsely charged the plaintiff with a crime, and that the answer of the defendant to the inquiry made was not responsive to the question put. It is true that the report made embraced a charge of a criminal offense; but it was, I think, directly responsive to the question asked. It related to the standing of the party. It affected his responsibility as a business man, and his financial credit and character. It had much to do with the question whether, as a business man, he was entitled to credit and confidence, and to what extent. It was, in fact, what the witness inquired for, and had a direct bearing upon the inquiry made, which embraced information as to the plaintiff. It was not an allegation or charge made by the defendant, but a report of information he had obtained in the due course of his business, and which had been entered upon his books. He merely communicated to a person who had a right to demand it, such information as he had, including a fact within the range of the inquiry made. Surely if any communication of this kind, made in good faith, is privileged, *Page 481 
then the whole is protected as much as any part of it, and it cannot well be urged that there is malice, because the whole truth is told and a portion of it is criminatory. Nor is there any evidence that the communication made to the witness, produced by the plaintiff, was repeated by the defendant in a form or under circumstances which constitute malice, or that it was uttered to others with any malicious intent. If the alleged slanderous words were communicated to other persons besides the witness, the surrounding circumstances evince that it was in good faith and confidentially, to those who had a right to require it, and where it would be protected as a privileged communication. While defamatory words are not shielded from punishment when published with a malicious intent, there was nothing in the conduct of the defendant, and in the manner in which he performed the delicate and responsible duty which devolved upon him, affecting, as it did, the credit, responsibility and character of the plaintiff, which evince malice. He refused to give a written report; was extremely careful and cautious, and with considerable apparent reluctance and hesitation, he imparted the information he possessed as to the defendant, thus rebutting the idea that any evil intent existed, and showing quite clearly that he acted in good faith. The business in which the defendant was engaged is sanctioned by the usages of commercial communities, and the proof in this case fails to establish that he transgressed any rule of law in its transactions.
The offer to prove efforts on the part of the defendant to procure testimony as to the truth of the slanderous words, does not appear to have been distinctly ruled upon by the court, nor was any exception taken in regard to it, and therefore it is unimportant. The terms of subscription signed by the witness were competent testimony to prove the relationship existing between him and the defendant, and the privileged character of the communication.
No other questions are made which call for remark, and the judgment should be affirmed. *Page 482