The evidence of the terms of the contract between the defendant and the witness Benton, to whom the alleged slanderous words were uttered, was properly received in evidence as contained in the subscription.
1. It tended to show the relations existing between the defendant and the person to whom the words were spoken, and to raise the legal question whether the communication was privileged.
In that sense it is to be regarded as part of the res gestæ.
2. It had a direct bearing on the question of malice. It was of precisely the same nature as the testimony which was rejected on the trial of Taylor v. Church, and the rejection of which was held in this court to entitle the defendant to a reversal of the judgment and a new trial. (8 N.Y. 452.)
It was not erroneous to reject the plaintiff's offer "to show efforts on the part of the defendant to procure testimony as to
the truth of the slanderous words." This general offer did not propose to prove any misconduct of the defendant which could be relevant as an aggravation of damages, or as showing malice.
A defendant sued or complained of for alleged slander has an unqualified right to procure testimony, and of course to "make efforts" to procure testimony, bearing on the inquiry whether the words are true or not, to be used, if necessary, for defense or mitigation, as the case may be. The rule often stated, that alleging the truth in the answer, and failing to prove it, aggravates the wrong, does not make such an offer admissible; on the contrary, the existence of such a rule would furnish a reason in itself why a defendant, before alleging the truth of the words spoken, should satisfy himself on the very question whether he can prove it or not. And if he has alleged it in his answer, he certainly may lawfully make efforts to procure testimony "as to its truth." It would be strange if a party complained of could not, in a proper manner, endeavor to procure testimony which, if found, might avail for his protection.
If the defendant in those efforts did any act which showed that his motives were malicious, or which ought to be *Page 483 
regarded as aggravating the alleged wrong, a different question would be suggested.
If such acts were admissible, they were not proposed to be proved on this occasion. The offer should have pointed to acts which the court could see were wrongful. Here, all that was proposed to be proved was, so far as the court could see, lawful and proper.
The remaining question goes to the merits of the plaintiff's case: Was the complaint properly dismissed, or had the plaintiff proved a cause of action?
This depended upon two questions:
1. Was the communication made to Babcock privileged?
2. Did the plaintiff give any proof which would warrant a finding that the words were spoken maliciously?
It is a general rule, that confidential communications respecting the character of another, made to one who is interested in the communication, and desires the information as a guide to himself in the conduct of his own affairs and dealings with such other, are privileged and not actionable, unless there be proof of malice. (Starkie on Slander, p. 321; Bradley v.Heath, 12 Pick. 162, and cases cited; 3 B. P. 587; 9 B. C. 403.)
On the other hand, if the occasion is used as a mere pretext or cloak, under which maliciously to utter false aspersions, with intent to injure, the occasion will not justify the speaking. (Weatherston v. Hawkins, 1 Term, 110.)
And it is well settled, that, when the occasion be one which makes the communication prima facie privileged, proof that it was false is not enough to create a presumption of malice. (Fowles v. Bowen, 30 N.Y. 20.)
Communications respecting the character of a servant, made to one who contemplates giving him employment, and desires and has a right to information on the subject, are privileged. (Carroll
v. Bird, 3 Esp. Cas. 204; Burr, 24, 25; Hodgson v.Scarlett, 1 B. A. 240.)
And the rule is stated even more broadly, that a publication warranted by an occasion apparently beneficial and honest, is not actionable without express malice; as, for *Page 484 
example, a communication in time of war with France to the officers of a volunteer corps in England that the sergeant, who was a Frenchman, had been the executioner of the king of France, and other words showing his sympathy with the public enemy, was held privileged.
So, a communication by a party interested, to those interested with him, respecting the conduct of a solicitor in the management of their concerns. (McDougall v. Clenridge, 1 Camp. Cas. 267.)
And it is enough that the person to whom the communication is made is interested; as, when a communication was made to the Bishop of Durham respecting the steward to his estates. (Clewn
v. Larrande, cited 1 Camp. Cas. 267.)
And, to come more nearly to the case before us — a communication made to one who had become surety for the purchases of the plaintiff. (Dunman v. Bigg, 3 Camp. 260.)
Upon the same general principle, merchants have an interest in knowing, and have a right to know, the character of their dealers and of those who propose to deal with them, and of those upon whose standing and responsibility they, in the course of their business, have occasion to rely.
As a necessary consequence, they may make inquiries of other merchants, or of any person who may have information; and if such merchant, or other person, in good faith, communicates the information which he has, or thinks he has, the communication is privileged.
These principles are not new nor unfamiliar, but have often been recognized in this State. The cases of Taylor v. Church
(8 N.Y. 452; 1 E.D. Smith, 283) and Fowles v. Bowen (30 N.Y. 20), and the cases cited therein, show the recognition of the rule.
Laying out of view for the moment the circumstance that the defendant in this case made it his business to seek information in order to furnish it to those whose occasions and interest required knowledge of the standing and character of others who dealt or proposed to deal with them, it is clear that if the witness Babcock, having procured a note to be discounted on the faith, in part, of the plaintiff's *Page 485 
responsibility, or being about to do so, called on the defendant for information respecting his standing and responsibility, it was entirely lawful for the defendant to give him all the information which he had on the subject. It was in a just sense a duty which one member of the community owes to another for mutual protection and benefit, and the law will recognize it as such by holding it privileged.
Information of the description referred to being important, there is no legal objection to the employment of an agent to seek and communicate it. And the agent may properly be paid for his time, labor and expense in the pursuit of such information.
If one merchant may employ his own private agent to seek and communicate such information (3 Denio, 110), there is no legal objection to the combination or union of two or more in the employment of the same agent. And, as a consequence, if an agent may act for several, he may make the pursuit of such information his occupation, and receive from those who desire to avail themselves of his services and his knowledge acquired in such occupation a compensation therefor.
In short, the inquiry is not, how did the defendant acquire the information, nor whether he received compensation for the information he had gained, but was the occasion one which justified him in giving such information as he possessed to the applicant.
It is observed by INGRAHAM, J., in Taylor v. Church (1 E.D. Smith, 283), in speaking of a business such as that in which the defendant is engaged, and which is called a mercantile agency: "Such establishments, properly conducted, and giving only correct information, are of the highest importance, not only to the parties immediately concerned, but to the mercantile community."
In my opinion, the right of the plaintiff to recover does not at all depend on the question whether the defendant was pursuing this business for gain, but on the same principles as if he had been in the same business with the witness who applied to him and had made the same communication. *Page 486 
There was not the slightest evidence of malice. On the contrary, the defendant took precautions (by declining to answer in writing) to prevent his communication passing to the knowledge of any but the applicant himself.
The proof that he had "given out" the same information to others was not material. That was not the slander for which the action was brought, and it did not tend to prove that he was actuated by malice in giving the information to the applicant. Indeed, in the connection in which the statement of the defendant that he had given it out to some others was made, it simply warranted the inference that other applicants similarly situated had received the same information. If so, the defendant acted in those instances, as in this, in mere discharge of his duty to his employers.
The animadversions of the counsel for the appellant are eminently just when applied to any who, in the hope of gain, for their own emolument, in bad faith, make traffic the good name and reputation of others. But I cannot concede that in the large population of a crowded city, and in a mercantile community where false representations, fraud, dishonesty and insolvency are easily concealed and but imperfectly known, or known to but few when detected, where it is easy for strangers to practice upon the unwary or unsuspecting, a business is to be characterized as unworthy which aims only to give correct information to those whose interests entitle them to seek it wherever it may be had.
The judgment should be affirmed.
All the judges concurring, except GROVER, J.,
Judgment affirmed. *Page 487