# WATERMAN L. ORMSBY, Appellant, *v.* BENJAMIN DOUGLASS, Respondent.

*Slander—Privileged Communications—Evidence—Malice.*

In an action for slander, if it appear that the Defendant had just occasion for speaking the alleged slanderous words, malice is not to be presumed; a communication which would otherwise be slanderous, is privileged, if made in good faith, in respect to a matter involving the duty of the party making it.

This principle applies to an agent employed to procure information respecting the solvency, credit, or standing of another, and who communicates confidentially and in good faith to his principal the result of his investigations.

APPEAL from Superior Court of New York city. The action was brought to recover damages for slander, and was tried before Justice Pierrepont and a jury in March, 1858. It appeared upon the trial that the Defendant kept a mercantile agency in New York city, the business of which was to obtain information as to the credit and responsibility of persons in business, and to furnish it to those who had occasion to use it. By the terms of subscription all information was considered strictly confidential, furnished only for the use of subscribers, and not to be communicated to any other person. In July or August, 1854, one Benton, a subscriber, who held a note endorsed by the Plaintiff, presented a written call for information as to the credit, responsibility, &c., of the Plaintiff. The book was examined by the clerk, and after consulting Defendant, and some objection by Defendant to reporting in writing (because the report was bad), and a further conversation with the witness, the Defendant stated that Ormsby was a man of no responsibility; he was a bad man, and worked for counterfeiters, and was a counterfeiter. Afterwards, in another conversation, after Plaintiff's attorney had written a letter to the Defendant, the witness asked Defendant if he had made further inquiries, and the result; and he said he had, and that the report was not so much out of the way, after all. He also stated that

he had given the report to some four or five other persons. The Plaintiff offered some evidence, which was objected to and excluded; and Defendant introduced some testimony, which was objected to and received, and exceptions taken. The points taken in this respect appear in the opinion. At the close of the Plaintiff's evidence, the Defendant moved for a nonsuit and a dismissal of the complaint, on the ground that the words spoken by the Defendant, concerning the Plaintiff, appeared to have been spoken confidentially, in the course of the Defendant's employment, to one of his employers, on the application of the latter, who had need of the information for the purpose of governing his discretion in his business, and that under the circumstances the communication was not unlawful, there being no evidence of malice or bad faith.

The Court granted the motion, to which the Plaintiff's counsel excepted. The exceptions were ordered to be heard at General Term, and judgment was suspended. A new trial was denied, and the Plaintiff appealed to the Court of Appeals.

*Philip G. Galpin* for Appellant.
*William Fullerton* for Respondent.

MILLER, J.—While the law authorizes actions of slander to be maintained to vindicate the reputation and character of individuals who have been wrongfully and unjustly assailed, it also upholds the principle that, in a certain class of cases, communications between individuals are regarded as privileged, and are therefore protected from the presumption of malice, which is usually to be inferred from the charge itself. Where the wrongful act is intentional, a malicious intent is implied, and the party is held responsible. But in actions of slander, if it be made to appear that the Defendant had just occasion to speak the words, then malice is not to be presumed, and some additional evidence is necessary to establish the charge. The rule is well settled, that a communication which would otherwise be slanderous and actionable, is privileged if made in good faith upon a matter involving an interest or duty of the party making it; though

such duty be not strictly legal, but of imperfect obligation to a person having a corresponding interest or duty (Van Wyck *v.* Aspinwall, 17 N. Y. 190; Harrison *v.* Bush, 32 Eng. L. & Eq. 173). And this principle applies to an agent employed to procure information as to the solvency, credit, and standing of another, who communicates, confidentially and in good faith, the information obtained to his principal, who has an interest in the subject-matter (Washburn *v.* Cooke, 3 Den. 110).

Within the rule laid down, the slanderous words for which the Plaintiff seeks to recover damages in this action were clearly privileged; and the Judge, upon the trial, committed no error in nonsuiting the Plaintiff. They were communicated by the Defendant in the performance of a duty imposed upon him to a person who had an interest in the matter, and who had a right to require the information.

The communication was in response to an inquiry as to the responsibility and standing of the Plaintiff, and embraced information relating to that subject. The witness had a note in his possession at the time, endorsed by the Plaintiff; and there would appear to have been some necessity for making the inquiry, and some reason presented to the Defendant from which he might well infer that there was occasion for the party to obtain the information he desired. So long as the Defendant acted in good faith, in reporting facts which came to his knowledge which had any bearing upon the subject of inquiry, even although the report may have contained criminatory matter which otherwise would have been slanderous and actionable, he was justified and excusable. The communication made being primâ facie privileged, as is apparent, the presumption of malice is repelled, and the onus of proving malice is upon the Plaintiff. The privileged character of the communication relieves the party from the malicious intent which is usually to be presumed from the act itself, and the action is to be regarded as governed by the same rule as an action for malicious prosecution.

The presumption of malice being rebutted, the Plaintiff must establish malice affirmatively on the part of the Defendant, in

uttering the alleged slanderous words. He must show that Defendant was influenced by some other motive than the mere discharge of a duty, and that the communication was not made solely for privileged purposes (Howard v. Thompson, 21 Wend. 319, 320; Somervill v. Hawkins, 3 E. L. & Eq. R. 506, 507; Taylor v. Hawkins, 5 id. 253, 256, 257; Harris v. Thompson, 24 id. 370, 380, 381; 32 id. 176; 3 Denio, 113; 17 N. Y. 193).

It is said that the Defendant falsely charged the Plaintiff with a crime, and that the answer of the Defendant to the inquiry made was not responsive to the question put. It is true that the report made embraced a charge of a criminal offence; but it was, I think, directly responsive to the question asked. It related to the standing of the party. It affected his responsibility as a business man, and his financial credit and character. It had much to do with the question whether, as a business man, he was entitled to credit and confidence, and to what extent. It was, in fact, what the witness inquired for, and had a direct bearing upon the inquiry made, which embraced information as to the Plaintiff.

It was not an allegation or charge made by the Defendant, but a report of information he had obtained in the due course of his business, and which had been entered upon his books. He merely communicated it to a person who had a right to demand such information, and he had included a fact within the range of the inquiry made. Surely, if any communication of this kind, made in good faith, is privileged, then the whole is protected as much as any part of it; and it cannot well be urged that there is malice because the whole truth is told, and a portion of it is criminatory. Nor is there any evidence that the communication made to the witness, produced by the Plaintiff, was repeated by the Defendant in a form or under circumstances which constitute malice, or that it was uttered to others with any malicious intent. If the alleged slanderous words were communicated to other persons besides the witness, the surrounding circumstances evince that it was done in good faith, and confidentially, to those who had a right to require it, and where it would be protected as a privileged communication. While defamatory words are not shielded

from punishment when published with a malicious intent, there was nothing in the conduct of the Defendant, or in the manner in which he performed the delicate and responsible duty which devolved upon him, affecting as it did the credit, responsibility, and character of the Plaintiff, which evidenced malice. He refused to give a written report, was extremely careful and cautious, and with considerable apparent reluctance and hesitation he imparted the information which he possessed as to the Plaintiff—thus rebutting the idea that any evil intent existed, and showing quite clearly that he acted in good faith. The business in which the Defendant was engaged is sanctioned by the usages of commercial communities, and the proof in this case fails to establish that he transgressed any rule of law in its transaction.

The offer to prove efforts on the part of the Defendant to procure testimony as to the truth of the slanderous words, does not appear to have been distinctly ruled upon by the Court, nor were any exceptions taken in regard to it; and therefore it is unimportant. The terms of subscription signed by the witness were competent testimony to prove the relationship existing between him and the Defendant, and the privileged character of the communication.

No other questions are made which call for remarks, and the judgment should be affirmed.

WOODRUFF, J.—The evidence of the terms of the contract between the Defendant and the witness Benton, to whom the alleged slanderous words were uttered, were properly received in evidence, as contained in Exhibit A.

1st. It tended to show the relation between the Defendant and the person to whom the words were spoken, and to raise the legal question whether the communication was privileged.

In that sense it is to be regarded as part of the res gestæ.

2d. It had direct bearing on the question of malice. It was of precisely the same nature as the testimony which was rejected on the trial of Taylor *v.* Church, and the rejection of which was

held in this Court to entitle the Defendant to a reversal of the judgment and a new trial (8 N. Y. R. 452).

3d. It was not erroneous to reject the Plaintiff's offer "to show efforts on the part of Defendant to procure testimony as to the truth of the slanderous words." This general offer did not propose to prove any misconduct of the Defendant which could be relevant as an aggravation of damages, or as showing malice.

A Defendant sued or complained of for alleged slander, has an unqualified right to procure testimony, and, of course, to "make efforts" to procure testimony, bearing on the inquiry whether the words are true or not; to be used, if necessary, for defence or mitigation, as the case may be.

The rule often stated—that alleging the truth in the answer, and failing to prove it, aggravates the wrong—does not make such an offer admissible. On the contrary, the existence of such a rule would furnish a reason in itself why a Defendant, before alleging the truth of the words spoken, should satisfy himself on the very question whether he can prove it or not; and if he had alleged it in his answer, he certainly may lawfully make efforts to procure testimony "as to its truth."

It would be strange if a party complained of could not, in a proper manner, endeavor to procure testimony, which, if found, might avail for his protection.

If the Defendant in those efforts did any act which showed that his motives were malicious, or which ought to be regarded as aggravating the alleged wrong, a different question would be suggested. If such acts were attempted, they were not proposed to be proved on this occasion.

The offer should have pointed to acts which the Court could see were wrongful. Now, all that was proposed to be proved was, so far as the Court could see, lawful and proper.

The remaining question goes to the merits of the Plaintiff's case. Was the complaint properly dismissed, or had the Plaintiff proved a cause of action?

This depended upon two questions:

1st. Was the communication made to Benton privileged?

2d. Did the Plaintiff give any proof which would warrant a finding that the words were spoken maliciously?

It is a general rule that confidential communications respecting the character of another, made to one who is interested in the communication, and desires the information as a guide to himself in the conduct of his own affairs and dealings with such other, are privileged, and not actionable, unless there be proof of malice (1 Starkie on Slander, 321; Bradley v. Heath, 12 Pick. 163, and cases cited; 3 B. & P. 587; 9 B. & C. 403).

On the other hand, if the occasion is used as a mere pretext or cloak under which maliciously to utter false assertions with intent to injure, the occasion will not justify the speaking (Weatherston v. Hawkins, 1 T. R. 110).

And it is well settled that when the occasion be one which makes the communication primâ facie privileged, proof that it was false is not enough to create a presumption of malice (Fowles v. Bowen, 30 N. Y. 20, &c.).

Communications respecting the character of a servant, made to one who contemplates giving him employment, and desires and has a right to information on the subject, are privileged (Carroll v. Bird, 3 Esp. 201; Burr. 2425; Hodgson v. Scarlett, 1 B. & Ald. 240).

And the rule is settled even more broadly, that a publication warranted by an occasion apparently beneficial and honest, is not actionable without express malice; as, for example, a communication in time of war with France to the officers of a volunteer corps in England, that the sergeant, who was a Frenchman, had been the executioner of the king of France, and other words showing his sympathy with the public enemy, was held privileged.

So a communication by a party interested, to those interested with him, respecting the conduct of a solicitor in the management of their concerns (McDougall v. Claridge, 1 Camp. 267).

And it is enough that the person *to whom* the communication is made is interested; as when a communication was made to the Bishop of Durham respecting the steward of his estate (Cleaver v. Sarraude, cited in 1 Camp. 268).

And to come more nearly to the case before us, a communication made to one who had become surety for the purchase of the Plaintiff (Dunman *v.* Bigg, 1 Camp. R. 269).

Upon the same general principle, merchants have an interest in knowing, and have a right to know, the character of their debtors, and of those who propose to deal with them, and of those upon whose standing and responsibility they, in the course of their business, have occasion to rely.

As a necessary consequence, they may make inquiries of other merchants, or of any person who may have information; and if such merchant or other person in good faith communicates the information which he has, or thinks he has, the communication is privileged.

These principles are not new nor unfamiliar, but have often been recognized in this State. The cases of Taylor *v.* Church (8 N. Y. 452; 1 E. D. Smith, 283); and Fowles *v.* Bowen (30 N. Y. 20), and the cases cited therein, show the recognition of the rule.

Laying out of view for the moment the circumstance that the Defendant in this case made it his business to seek information, in order to furnish it to those whose occupation and interest required knowledge of the standing and character of others who dealt or proposed to deal with them, it is clear that if the witness Benton, having procured a note to be discounted on the faith, in part, of the Plaintiff's responsibility, or being about to do so, called on the Defendant for information respecting his standing and responsibility, it was entirely lawful for the Defendant to give him all the information which he had on the subject. It was in a just sense a duty which one member of the community owes to another for mutual protection and benefit, and the law will recognize it as such by holding it privileged.

Information of the description referred to being important, there is no legal objection to the employment of an agent to sell and communicate it.

And the agent may properly be paid for his time, labor, and expense in the pursuit of such information.

If one merchant may employ his own private agent to seek and communicate such information (3 Denio, 110), there is no legal objection to the combination or union of two or more in the employment of the same agent.

And as a consequence, if an agent may act for several, he may make the pursuit of such information his occupation, and receive from those who desire to avail themselves of his services and his knowledge acquired in such occupation, a compensation therefor.

In short, the inquiry is not, How did the Defendant acquire the information? nor whether he received compensation for the information he had gained; but, Was the occasion one which justified him in giving such information as he possessed of the Appellant?

It is observed by Ingraham, J., in Taylor *v.* Church (1 E. D. Smith, 283); in speaking of a business such as that in which the Defendant is engaged, and which is called a mercantile agency : " Such establishments, properly conducted, and giving only correct information, are of the highest importance, not only to the parties immediately concerned, but to the mercantile community." In my opinion, the right of the Plaintiff to recover does not at all depend on the question whether the Defendant was pursuing this business for gain, but on the same principles as if he had been in the same business with the witness, who applied to him, and had made the same communication.

There was not the slightest evidence of malice ; on the contrary, the Defendant took precaution (by declining to answer in writing) to prevent his communication passing to the knowledge of any but the witness himself.

The proof that he had " given out " the same information to others, was not material. That was not the slander for which the action was brought, and it did not tend to prove that he was actuated by malice in giving the information to the witness.

Indeed, in the connection in which the statement of the Defendant—that he had given it out to some others—was made, it simply warranted the inference that other applicants, similarly situated, had received the same information. If so, the Defendant acted in

those instances as in this, in mere discharge of his duty to his employers.

The animadversions of the counsel for the Appellant are eminently just when applied to any who, in the hope of gain for their own emolument, in bad faith make traffic in the good name and reputation of others. But I cannot concede that in the large population of a crowded city, and in a mercantile community where false representations, fraud, dishonesty, and insolvency are easily concealed, and but imperfectly known, or known to but few when detected—where it is easy for strangers to practice upon the unwary or unsuspecting—a business is to be characterized as unworthy which aims only to give correct information to those whose interests entitle them to seek it wherever it may be had.

The judgment should be affirmed.

All affirm.