LEWIS SUNDERLIN et al., Respondents, *v.* HENRY BRADSTREET et al., Appellants.

The proprietors of a mercantile agency engaged in collecting and publishing for circulation among all its patrons, information as to the standing and financial credit of merchants and traders, are liable for a false report thus disseminated, injurious to the credit of the subject of it, although made in good faith and upon information deemed reliable.

Such a communication is privileged, only when it is confined to those having an interest in the information.

The fact that the libelous communication was in cipher, understood by the subscribers only, does not affect the liability.

(Decided September 7th, 1871.)

APPEAL from judgment of the late General Term of the seventh judicial district, entered upon order denying motion for new trial, and directing judgment on verdict in favor of plaintiffs.

The plaintiffs were merchants, doing business in the city of Rochester. The defendants were the proprietors of a mercantile agency. They published a semi-annual volume, containing the names of persons and firms doing business in various parts of the United States and Canadas, and information in reference to their financial credit. They also published what they called a weekly sheet of corrections, which was sent to their subscribers in the city of New York by private messenger, and in the country by mail. About ten thousand copies of their semi-annual volume, and between three and four thousand copies of their weekly sheet are so distributed.

In this weekly sheet, under the date of January 31st, 1868, they published that the plaintiffs had failed. This was con-

fessedly false. The plaintiffs called upon the defendants, for the names of the parties furnishing the information, which they refused to give, but published the next week a retraction of the report complained of.

The jury found a verdict for plaintiff for $400. Case and exceptions ordered to be heard at first instance at General Term.

*Delavan F. Clark*, for appellants. That, if the communication was privileged, the action is not maintainable without proof of express malice. (*Harris* v. *Thompson*, 24 Eng. L. & E., 370; *Fowles* v. *Bowen*, 30 N. Y., 20.) The communication was privileged. (Cur., per CAMPBELL, 2 Ch. L., in *Harrison* v. *Bush*, 5 Ell. & Bl. Q. B., 348; *Van Wyck* v. *Aspinwall*, 17 N. Y., 193; SELDEN, J., in *Lewis & Herrick* v. *Chapman*, 16 id., 369; PARKE, B., in *Toogood* v. *Spyring*, 1 Cromp., Mees. & Rosc., 193; *Goldstein* v. *Foss*, 2 Car. & P., 252; S. C., 6 B. & C., 154; *Gettings* v. *Foss*, 3 Car. & P., 160; *Fleming* v. *Newton*, 1 H. L. C., 379; *Fowles* v. *Bowen*, 30 N. Y., 20; note to *Wyatt* v. *Gore*, Holt's N. P., 299; Townsend on Slander and Libel, § 239; *Billings* v. *Russell & Waters*, Boston Law Reporter, vol. 8, N. S., 669; *Ormsby* v. *Douglass*, 37 N. Y., 477, overruled, *Taylor* v. *Church*, 8 id., 452.) A person, believing himself possessed of knowledge, which if true, *does* or may affect the rights and interests of another, may communicate it to that other. (Townsend on Libel and Slander, § 241; 2 Greenl. Ev., § 421.) Liberty of publication is permitted to the extent of the exigencies of society and business. (*Parsons* v. *Surgey*, 4 Foster & Fin., 248, and note; *Toogood* v. *Spyring*, 1 Cromp., M. & Rosc., 181; *Taylor* v. *Hawkins*, 16 Adol. & Ellis, N. S., Q. B. R., 308; *Lawless* v. *Anglo-Egyptian Cotton and Oil Co.*, Law Rep., 4 Q. B., 262; *Fleming* v. *Newton*, 1 House Lords Cas., 379; *Gassett* v. *Gilbert*, 6 Gray, 94.)

*W. F. Cogswell*, for respondents. The communication was not privileged. (*Taylor* v. *Church*, 8 N. Y., 452.)

ALLEN, J. The only question presented by the appeal, has respect to the character and occasion of the publication of the alleged libel, and is, whether the circumstances and occasion of the publication were such as to absolve the defendants from liability, in the absence of proof of express malice; that is, whether it is within the protection of privileged communications.

We might properly decide this question upon the authority of *Taylor* v. *Church* (4 Seld., 452), in which this precise question was determined by a unanimous court, seven judges taking part in the decision, the other judge refraining from expressing an opinion, for the reason that he was not present at the argument.

The point was made upon the trial of the action, and presented by counsel upon the appeal in this court, and was material to be decided for the guidance of the court below, upon a re-trial which this court ordered, inasmuch as, if the publication was privileged, it would probably be fatal to the plaintiff's cause of action; and the court, by a deliberate and formal resolve, adjudged that the alleged libel was not a privileged communication. The circumstances under which this judgment was given, as well as the method adopted by the judges in determining this precise question by a formal declaration, entitle the decision to peculiar weight as an authority. That case cannot be distinguished from this in any circumstance favorable to the defendant.

The decision, as abstracted by the reporter, was that "one who undertakes, for an association of merchants in New York, to ascertain the pecuniary standing of merchants and traders residing in other places, who are customers of some of the members of the association, and who furnishes reports to all the members of the association, irrespective of the question, whether they have an interest in the question of the standing of such merchants and traders, is liable for any false report made by him prejudicial to the credit of the subject of it, although made honestly, and from information upon which he relied."

In the case before us, the defendants were in no sense the agents of an association of merchants, or of their patrons. Of their own volition, and for their own profit, they established a bureau for collecting and disseminating information as to the character, credit, and pecuniary responsibity of merchants and traders throughout the United States. The business is in the nature of an intelligence office; and it is not intended by this to intimate, that it is not an entirely lawful and reputable business; or that it is not of general utility, or perhaps, a necessity to the commerce and business of the country. All may be conceded that is claimed for it by its friends; but in its conduct and management it must be subjected to the ordinary rules of law, and its proprietors and managers held to the liability which the law attaches to like acts by others. The information acquired by them was their own, and was communicated to others, or made public in such form and upon such terms as the defendants dictated.

In the established course of their business, they communicated with their patrons by means of semi-annual publications, with weekly corrections printed and furnished to each. The number of copies of each publication being about 10,000, distributed to every part of the country among merchants, bankers, and traders.

The alleged libel was published in one of the weekly corrections of the regular semi-annual publications, and was thus extensively circulated. Its distribution was general among all the subscribers to the defendants' publication, irrespective of their interest in the question of the plaintiffs credit and standing.

Whether a libel or slander is within the protection accorded to privileged communications, depends upon the occasion of the publication or utterance, as well as the character of the communication. The party must have a just occasion for speaking or publishing the defamatory matter. A communication is privileged within the rule when made in good faith, in answer to one having an interest in the information sought; and it will be privileged if volunteered when the

party to whom the communication is made has an interest in it, and the party by whom it is made, stands in such relation to him as to make it a reasonable duty, or at least proper that he should give the information. (*Todd* v. *Hawkins*, 8 C. & P., 88; *Cockayne* v. *Hodgkisson*, 5 C. & P., 543; *Washburn* v. *Cook*, 3 Den., 110, per SELDEN, J.; *Lewis* v. *Chapman*, 16 N. Y., 369.) It is not necessary to go farther in this case; and it may be assumed that if any one having an interest in knowing the credit and standing of the plaintiffs, or whom the defendants supposed and believed had such interest, had made the inquiry of the defendants, and the statement in the alleged libel had been made in answer to the inquiry in good faith; and upon information upon which the defendants relied, it would have been privileged. This was the case of *Ormsby* v. *Douglass* (37 N. Y., 477.) The business of the defendant in that action was of a similar character to that of the present defendants; and the statement complained of was made orally, to one interested in the information, upon personal application at the office of the defendant, who refused to make a written statement.

There was no other publication, and it was held, that the occasion justified the defendant in giving such information as he possessed to the applicant. *Taylor* v. *Church* was referred to as authority for the rule, and so far from being overruled or questioned, was affirmed. The decision in *Taylor* v. *Church* was placed upon the ground, that the alleged libel was printed by the procurement of the defendant, and distributed by him to persons having no special interest in being informed of the condition of the plaintiffs' firm.

In the case at bar, it is not pretended that but few, if any, of the persons to whom the 10,000 copies of the libelous publication were transmitted, had any interest in the character or pecuniary responsibility of the plaintiffs; and to those who had no such interest, there was no just occasion or propriety in communicating the information. The defendants, in making the communication, assumed the legal responsibility which rests upon all who, without cause, publish defamatory matter

of others, that is, of proving the truth of the publication, or responding in damages to the injured party.

The communication of the libel, to those not interested in the information, was officious and unauthorized, and therefore, not protected, although made in the belief of its truth, if it were, in point of fact false.   When a communication is made in the discharge of some public or private duty, the occasion prevents the inference of malice which the law draws from unauthorized communications, and affords a qualified defence, depending on the absence of malice.   (*Toogood* v. *Spyring*, 1 C., M. & R., 181; *Fowles* v. *Bowen*, 30 N. Y., 20.)   There has been no diversity in the utterances of judges and courts upon the subject, but all have spoken one language.   (See 5 Blatch. C. C., 498.)

In those cases in which the publication has been held privileged, the courts have held that there was a reasonable occasion or exigency, which for the common convenience and welfare of society, fairly warranted the communication as made.   But neither the welfare nor convenience of society will be promoted, by bringing a publication of matters, false in fact, injuriously affecting the credit and standing of merchants and traders, broadcast through the land, within the protection of privileged communications.   The principle of *Taylor* v. *Church* is recognized in all the cases.   (*Harris* v. *Thompson*, 13 C. B., 333; *Van Wyck* v. *Aspinwall*, 17 N. Y., 190; *Harrison* v. *Bush*, 5 E. & B., 344; *Goldstein* v. *Foss*, 6 B. & C., 128; *Getting* v. *Foss*, 3 C. & P., 160.)   The fact that the libelous statement was in cipher is not material.   It was in language understood by the numerous patrons of the defendants and all the subscribers to the publications.   They had the key to the cipher, and the publication was equally significant and injurious as if made in the distinct terms, in the very words, indicated by the numeral figures used.

The judgment should be affirmed.

All concur.

Judgment affirmed.