## SUPREME COURT.

### PURDY agt. CARPENTER & FERRIS.

The Code does not authorize a *general demurrer*.

The question arises whether a demurrer to a complaint stated in the words of the Code (§ 144, *sub.* 6), " *That the complaint does not state facts sufficient to constitute a cause of action*" is a general demurrer? *Held*, that it is nothing else; and is consequently unauthorized.

(BARCULO, *Justice—gives the reasons ; and reviews the case of Swift agt. De Witt*, 3 *How. Pr. R.* 280, *and Durkee agt. the Saratoga and Washington Rail Road Co.*, 4 *id.* 226, *which hold the other way. Glenny agt. Hitchins*, 4 *How.* 98, *agrees with this case.*)

It is not necessary to *aver express malice*, or *want of probable cause* in a complaint for *libel.* These points belong more properly to the *onus* and *measure of proof* than to the form of the pleadings.

*Dutchess Special Term, February* 1852. *Demurrer to Complaint.* The plaintiff sets forth in his complaint that he is a trustee of a school district in the county of Westchester, and that the defendants, in a written application to the superintendent of common schools, to remove the plaintiff from his office, composed, signed and published " falsely, wickedly and maliciously," " a certain false, scandalous, malicious and defamatory libel," imputing to the plaintiff the guilt of having embezzled moneys coming into his hands as trustee for the purpose of building a school house.

The defendants demur, and " specify the following ground of objection to the complaint, to wit: that the said complaint *does not set forth facts sufficient to constitute a cause of action.*

NELSON & COFFIN, *for Plaintiff.*

FERRIS & FROST, *for Defendants.*

BARCULO, Justice.—Two or three instances of this general form of demurring have been before me lately; and they have always struck me as being imperfect, and inconsistent with modern notions of good pleading. But, as many questions of practice are now involved in doubt and uncertainty, I have forborne to record my impressions until they could be confirmed by a proper examination of the subject. Having now looked carefully through

the provisions of the Code, and all the reported cases touching the question, my conclusion is that this mode of demurring ought not, and can not, consistent with the Code, be permitted to prevail. For this opinion, the following reasons are assigned:

1. In the *first* place, under the former practice both here and in England, *general* demurrers were prohibited by the rules of the courts. Our rules of 1847 required the party demurinrg to " briefly but plainly specify the objections in matters of substance as well as those of form upon which he intends to rely on the argument" (*Rule* 82). By the *Regulae generales* of Hilary term, 1833, the English courts require that some matter of law intended to be argued shall be stated in the margin of the demurrer before it is signed by counsel.

2. This demurrer is nothing more nor less than a *general demurrer*. It simply states that the " complaint does not set forth facts sufficient to constitute a cause of action." This is precisely equivalent to the old formula, " that the said declaration and the matters therein contained, in manner and form as the same are above set forth, are not sufficient in law for the said plaintiff to have or maintain his aforesaid action thereof against the said defendant."

3. The question then arises, whether the Code has restored the general demurrer, which had been virtually abolished for good and sufficient reasons. Section 144 declares *when* the defendant may demur, and section 145 declares *how* he shall demur; viz. by *specifying* distinctly the grounds of objection to the complaint. The former provides, among other things, that a demurrer will lie, when it appears upon the face of the complaint " that the complaint does not state facts sufficient to constitute a cause of action." But it is no where provided that a simple repetition of this clause shall be deemed a *specification* of the grounds of objection. On the contrary, it is obvious, from a consideration of the context, that such could not have been the intention of the code makers. Can any one suppose that a demurrer for want of proper parties, would be good, if it should merely state, in the language of the fourth subdivision, " that there is a defect of parties"? Or will it be contended that the defendant specifies the grounds of demurrer, under the fifth sub-

division, by simply saying, " that several causes of action have been improperly united"? Clearly not. He must, in the one case, distinctly state in what respect there is a defect of parties; who ought to be added as plaintiffs or defendants. And in the other case, he would be required to point out the several causes of action, and show how they were improperly joined. The same reasoning is, in my judgment, applicable to all the previous subdivisions. Now, if it be true, that, in regard to the other subdivisions of section 144, or any of them, it is not a sufficient specification of the grounds of objection, to adopt the language of the statute, I am at a loss to conceive why such a construction should be put upon the last subdivision; especially when the consequence is, to restore the old general demurrer. It seems to me quite plain that the sections under consideration, intended to preserve the former rule requiring the party demurring to " briefly, but plainly, specify the objections upon which he intends to rely on the argument."

Again, if this mode of demurring is to be tolerated, section 145 becomes a dead letter. For the demurrer now before us does not in any sense, *distinctly specify* the grounds of objection to the complaint. Instead of being *specific*, the objection is as *general* as it is possible for language to make it. It does not afford us any accurate information. The defendants say simply, that the complaint is bad in substance. But it may be bad for many reasons. What are they? Is it bad because the matter is not libelous in its terms? Or because the publication is not sufficiently averred? Or is it for want of proper inuendoes or averments to point the libelous matter? No one can tell what the defendants are aiming at, until the case comes on to be argued. The plaintiff gropes in the dark until his adversary chooses to enlighten him. It is doubtful whether one lawyer in ten, upon this complaint and demurrer, could conjecture the real ground which the defendants rely on. I am free to confess, that after this case was submitted to me, without argument or points, except a rather miscellaneous brief, I was unable to ascertain what was the real ground of demurrer, until I had written to the attorneys, when I was informed by one that the complaint was supposed to be bad because it did not aver *express malice !* and by the other, that

the defect consisted in not alleging "want of probable cause." This is, to my mind at least, quite a sufficient illustration of the impropriety of permitting such general pleading. I think the defendants should have stated the ground in the demurrer, to apprise the opposite party, and give him an opportunity, if he thought proper, of moving it as frivolous; or amending, if he considered it necessary. The whole spirit of the Code is hostile to such pleading; and common sense condemned it long ago.

I am aware that two, at least, of my brethren, for whose opinions I entertain the highest respect, have given these sections a different construction (see the opinions of Justice GRIDLEY in Swift agt. DeWitt, 3 *How.* 280, and of Justice WILLARD in Durkee agt. The Saratoga and Washington Rail Road Co., 4 *How.* 226). I would be very reluctant to differ with these learned judges upon any general legal principles; but in our efforts to construe the Code and reduce it to some sort of consistency, it is not, and ought not to be, surprising, that we should occasionally entertain different views. And as Justice SILL in Glenny agt. Hitchins (4 *How.* 98), has taken the other side of the case, as well as some of the local judges of the city of New York, I feel at liberty as yet to consider it an *open question.*

The reasons assigned by the two learned judges whose opinions I am dissenting from, as I understand them, are these:

1. The Code authorizes this mode of demurring.

2. There are many cases where a party can not specify more particularly the grounds of objection, and if he could it would lead to *prolixity.*

3. The objection is not waived by answering over.

In regard to the first of these reasons, I have already incidentally answered, it, by showing that this demurrer does not *specify* any thing, nor give any information except that given by an old fashioned general demurrer; and that section 145, by adopting the substance of the old rule abolishing general demurrers, precludes the idea of a return to them. To refer to the sixth class can not be deemed a specification; for it is only saying that the defendants do not rely upon the others, which, for the most part, contain only such matters as could be reached by special demurrer.

Purdy agt. Carpenter and Ferris.

With reference to the second reason, it is sufficient to say, it lay with the same force against rule 82 which we adopted in 1847, and to all rules which require demurrers to be special. But I am unable to conceive of a case where the party can not more fully specify his cause of demurrer. The counsel *must* specify them on the *argument* and in his *points* ; and if he can do it *then* he can in his *demurrer*. Nor does it necessarily lead to prolixity. The points can be, and should be, concisely stated. Nor do I recollect that we had any of these supposed difficulties, while the practice of requiring all demurrers to be special prevailed. It is not a new system I am contending for, but one that has been tried and which worked well; and I am unwilling to abandon it without cause.

To the third reason, that this general demurrer is sufficient under the sixth class, because *the objection is not waived by answering over*, we make a similar answer. The law is not changed in this respect. If, under the old system, the declaration did not contain a cause of action, it was no waiver to plead and go to trial; for even after verdict the court would *arrest the judgment*, and the plaintiff might be nonsuited at the circuit, or a writ of error would lie.

I recollect that at the Richmond circuit in April last, a plaintiff who had brought an action against a town, for damages sustained by reason of a defective bridge, was nonsuited on the ground that the action would not lie, although he offered to prove all that was set forth in his complaint. Upon the same principle we have recently, at a general term in this district, reversed a judgment obtained after trial and verdict at the circuit, in an action brought by a tax payer against a town, to recover moneys illegally assessed and collected of him by way of tax, although the point was not raised at the circuit nor presented by the exceptions. These decisions, however, were not based upon the Code, but upon ancient principles of the common law. In this respect, as in most of its valuable parts, the Code is a mere affirmance of well established legal principles. For, although some defects were waived by pleading, and others cured by verdict, it never was the law, that a declaration, bad in substance, that " did not state a cause of action," could ever be made good

by any act of the defendant, or be capable of sustaining a judgment in any stage of the litigation. And yet we know that for many years, both in England and in this state, the legislatures and the courts have been devising means to restrict and prevent general demurrers in consequence of their tendency to increase and protract litigation. And while the Code clearly *permits*, if it does not require us, to adhere to that which we all deemed a salutary rule heretofore, I can see no good reason for retrograding to the condemned system of general demurrers.

II. But, if the causes were properly assigned, this demurrer could not be sustained. For it is not necessary to *aver* express malice, or want of probable cause, in a complaint for libel. The point relates rather to the *onus* and measure of proof, than to the form of the pleadings. The reported cases on this subject recognize three classes of libel suits. The *first* comprises those cases where the matters alleged to be libelous, are *absolutely privileged ;* in which it is held that an action will not lie, however malicious or unfounded the charge may be. An instance is found in Garr vs. Selden (4 *Comst.* 91), where the libel was contained in a pertinent affidavit made and used to resist a motion in a pending suit. So also, members of the legislature, judges, jurors, counsellors and witnesses, while acting within the line of their duty, are absolutely protected. The *second* class includes the cases where the publication was made when the defendant had some *just occasion* for speaking of the plaintiff, and is, therefore, so far privileged, that an action can not be maintained without express malice being shown on the trial. This embraces numerous cases where complaints are made through the proper channels to obtain redress, and where the communication is made in answer to proper inquiries, &c. in which good faith is presumed, until the contrary is made to appear. The case of Washburn vs. Cooke (3 *Denio*, 110), is an instance. The *third* class relates to ordinary cases, where no proof of malice is required, beyond what may be inferred from the injurious nature of the accusation. In the first class, the protection is *absolute ;* in the second *prima facie ;* and in the third, nothing at all.

Now, according to the reasoning of the defendant's counsel,

the present case comes within the second of these classes. Admitting this to be so, it is quite obvious that the averments in the complaint are sufficient. If such matters are proper to be pleaded they must be set up as a defence, as is shown by the case of O'Donaghue vs. M'Govern (23 *Wend.* 26). But it is not necessary to plead them at all. If, upon the trial, it appears that the publication was made on a just occasion, the burden will thereby be thrown upon the plaintiff, of proving express malice; and then the question of probable cause may be enquired into. For in such cases the jury are to be satisfied that the defendant " did not act honestly and in good faith, but intended to do a wanton injury to the plaintiff."

Judgment for the plaintiff, with leave to the defendant to answer within twenty days, on payment of costs.