## DAVID W. KNOWLES vs. ALBERT C. PECK AND ANOTHER.

The patentees of a preparation known as vulcanized rubber had obtained an injunction against its manufacture and sale by the plaintiff, who was a dentist, and for the purpose of ascertaining whether he was violating the injunction, and believing that he was doing so, they employed P, one of the defendants, to procure some person to apply to the plaintiff for a set of teeth upon a plate of vulcanized rubber. P procured J, the other defendant, to make the application, and at his request the plaintiff made and delivered to him a set of teeth upon such a plate, taking pay therefor. J then reported the facts to P, who reported them to the patentees, and at the request of the latter J made a statement of the facts in an affidavit, and soon after proceedings for contempt were commenced by the patentees against the plaintiff. In a suit brought against P and J, for a conspiracy to procure the plaintiff to violate the injunction and subject him to costs and damage, it was held—

1. That the patentees had a right to resort to that mode of ascertaining whether the plaintiff was disregarding the injunction.

2. That the procurement of the application to the plaintiff for the set of teeth upon a vulcanized rubber plate did not constitute a license to him to make them.

3. That if it was to be regarded as an offer of a license, yet as the plaintiff did not know of their relation to the matter, he could not be regarded as having accepted the offer and acted under the license.

4. That the communication of J to the patentees, both in its oral form and as an affidavit, was a privileged one.

And it seems that as the injunction forbade the manufacture as well as the sale of the patented article by the plaintiff, it would have been as much a violation of the injunction for him to have partially prepared the article and delivered it to another person to complete, as if the whole had been done by him.

And held that evidence was admissible that the defendants believed that the plaintiff had violated the injunction in other instances, and were acting in that belief in what they did.

TRESPASS ON THE CASE for a conspiracy to injure the plaintiff by certain fraudulent acts; brought to the Superior Court in Litchfield County.

The first count of the declaration alleged that a certain company known as The Goodyear Dental Vulcanite Company, who were the patentees of a manufactured article known as

vulcanite or vulcanized india-rubber, had, in December, 1868, obtained an injunction in the United States Circuit Court for the district of Connecticut, perpetually restraining him from making or selling any dental plates or other articles of vulcanized india-rubber; that the plaintiff was a dentist by profession, practicing his profession in the town of New Milford in Litchfield County in this state; that in December, 1869, the defendants, with intent to injure him in his professional reputation and to subject him to legal proceedings and a fine and costs, as well as great trouble and expense, entered into a conspiracy to endeavor to induce him by false and fraudulent representations and under the pretense of employing his professional services in good faith, to make for the defendant Jeffreys, and sell to him, a dental plate of vulcanized india-rubber, with a set of teeth upon the same, and thereby to violate the injunction, with the intent to report such violation to the patentees and to furnish evidence that could be used against him by the patentees in court, and by which he could be subjected to punishment and to great damage; that the defendant Jeffreys under the conspiracy made application to him to make him such a set of teeth upon such a plate; that he made the same of the material used in vulcanized india-rubber, as he had a right to do, but refused to violate the injunction by vulcanizing the same, and that the said Jeffreys, being unable to persuade him to do it, did himself vulcanize the preparation; that the said Jeffreys, on the 10th of January, 1870, under the same conspiracy, did, with the assistance of the defendant Peck, make, before a lawful magistrate, an affidavit that the plaintiff had made and sold to him a set of teeth with a plate of vulcanized india-rubber in violation of the injunction; that the defendants, under the same conspiracy, forwarded the affidavit to the patentees, with a further false and fraudulent statement with regard to the matter, and instigated and procured the patentees to institute proceedings against the plaintiff in the United States Circuit Court for a violation of the injunction, in consequence of which the plaintiff was compelled to employ counsel, and prepare for trial, and to attend the court and make defense, by which he was

subjected to great trouble and expense and to injury to his professional reputation.

The second count charged the defendants with maliciously making false declarations (the same ones stated in the first count) to the patentees, to induce them to bring a vexatious suit against the plaintiff.

The third count charged them with having made a false affidavit to the same effect for the purpose of subjecting the plaintiff to a legal penalty and to expense and trouble.

The case was tried to the jury on the general issue, before *Sanford, J.*

On the trial a copy of the petition brought by the Goodyear Dental Vulcanite Company against the plaintiff, in the Circuit Court of the United States for the district of Connecticut, and of the subsequent proceedings thereon, was presented by the plaintiff and admitted in evidence; also the notice of application to the same court for an attachment against the plaintiff for breach of its injunction, which was legally served on the plaintiff. And it was proved, and not denied, that the plaintiff attended before the court at Hartford, on the day appointed, with counsel, in compliance with the notice, and incurred expenses by so doing; and that an adjournment of the proceeding was thereupon had by request of the complainants with leave to them to give notice to the plaintiff of their intention to prove, at such adjourned day, other cases of infringement than that named in the notice; which notice was duly given, and further and final proceedings were had at such adjourned day of hearing.

The plaintiff offered evidence to prove, and it was admitted, that at the time of the acts complained of in his declaration he was, and had for a long time been, a practicing dentist in New Milford. He also offered evidence to prove that, in the month of December, 1868, the defendant, Peck, who was a practicing dentist in Woodbury, and an agent of the Goodyear Dental Vulcanite Company, received instructions from Josiah Bacon, the general agent and manager of the company, stating that they believed the plaintiff to have violated the injunction in several instances, and directing him to send some person

to him who should employ him to manufacture a dental plate
of hard rubber, for the purpose of charging him with a viola-
tion of the injunction, and procuring his punishment by the
court; that in pursuance of these instructions, Peck employed
the other defendant, Jeffreys, to go, and that he did go, to
the plaintiff in New Milford, being a stranger to him, and
represented to him that he was an artist casually in the neigh-
borhood, and that he wished to employ him to make him a
set of teeth on a plate of hard rubber; that the plaintiff
objected to making such a plate on the ground that he was
under an injunction against doing it, and advised Jeffreys to
have a metal plate instead of rubber; that Jeffreys refused to
have anything but rubber, and insisted that the plaintiff
should make him such a plate; that finally the plaintiff told
Jeffreys that the violation of the injunction consisted in the
act of vulcanizing or hardening the rubber plate, and did not
extend to the manipulation of the soft rubber material into
the proper form of a dental plate, and that he could legally
perform this manipulation, but not the vulcanizing process,
and that he would be willing to make up a plate of such soft
material and prepare it for vulcanizing, but that he would not
be responsible for the vulcanization; that Jeffreys said he was
accustomed to vulcanizing, and had watched vulcanizers, and
if the plaintiff would make up the plate he would attend to
the vulcanization himself, and that it was arranged between
them that Jeffreys should have the use of the plaintiff's vul-
canizer and vulcanize the plate in his office; that the plaintiff
thereupon took the impression of Jeffreys' mouth, prepared
the die of plaster of Paris in which to form the dental plate, and
thereupon prepared and moulded into the die a quantity of
dental gum, which is a soft material, sold in the shops, con-
sisting of india-rubber and sulphur in proper proportions, and
fitted the same into an iron case in all respects ready to be
placed in the vulcanizer to be subjected to the requisite degree
of heat, and then delivered it to Jeffreys, remarking that his
work on it was now completed, and that Jeffreys must be
responsible for its vulcanization; that the plaintiff then fur-
nished a vulcanizer, thermometer and watch, and gave Jeffreys

such information about their use as he required to supplement his previous knowledge, and then left him in his back office alone for one or two hours, by which time the vulcanizing process was finished; that the plaintiff then took the hardened plate, removed it from the iron case and the die of plaster of Paris and trimmed it, and returned it to Jeffreys complete for use, charging and receiving therefor eight dollars, which was not the full price of such vulcanized plate, but covered only his services in its previous preparation; that Jeffreys then returned to Peck with his completed plate, and informed him of all that had occurred; that Peck then wrote a statement of the case to Bacon, who returned to him for execution the affidavit below given, and that Jeffreys, in the presence of Peck, executed the same, and Peck forwarded it to Bacon, to be used as a basis for the proceedings in court against the plaintiff, and that soon after the proceedings for contempt were commenced against him in the Circuit Court.

The affidavit was as follows:

" Mr. Henry L. Jeffrey, of Beacon Falls, Conn., of lawful age, being duly sworn, testifies: That on or about the 31st day of December, A. D. 1869, I called on Dr. D. W. Knowles of New Milford, state of Connecticut, and ordered a set of artificial teeth, upon a base of hard rubber. That an impression of the mouth was taken, and said plate and teeth were made in pursuance of aforesaid order, and delivered to me on or about the first day of January, A. D. 1870, which said plate or denture is of hard rubber or vulcanite, and is hereto annexed; it contains five teeth. That I paid said Dr. D. W. Knowles therefor the sum of eight dollars. Further the deponent saith not. HENRY L. JEFFREY. [SEAL.]"

It was admitted by the defendants that Bacon was agent and general manager of the company, and had full authority to control its patents, and to license the use of the same; also that the defendant Peck was a dentist in Woodbury, and an agent of the company.

And the defendants offered evidence to prove, and claimed they had proved, that after certain proceedings against the plaintiff for contempt, Bacon had been informed, and believed,

that the plaintiff had been and was still violating the injunction; that for the sole purpose of satisfying himself whether the plaintiff was then using hard rubber in violation of the injunction, Bacon requested Peck to send some person to the plaintiff to apply for such rubber plate, and if the same should be made by him to receive it and pay for it; that in compliance with this direction Peck requested Jeffreys to call on the plaintiff for that purpose; that no other instructions were given to Jeffreys; that Jeffreys did call on the plaintiff to procure for himself a hard rubber plate, and that one was made by the plaintiff, without any assistance of Jeffreys other than that, at the request and under the direction of the plaintiff, he watched the vulcanizer during the process of vulcanization, and paid the plaintiff eight dollars for the plate; that Jeffreys informed Peck that the plaintiff had made and sold him the plate, and Peck reported the same to Bacon; that afterwards Jeffreys, in the presence of Peck, made and swore to the affidavit, and the same was forwarded by Peck to Bacon; that Peck believed the affidavit to be true, and that it was true in fact; and that neither Peck nor Jeffreys had any knowledge that the affidavit was intended to be used by the company in any proceedings against the plaintiff, and no knowledge of the proceedings which were afterwards commenced by the company against the plaintiff for contempt, till long after they had been commenced.

The plaintiff requested the court to charge the jury as follows:

1st.  That if they should find that Jeffreys went to the plaintiff by the direction of Bacon, to employ him to make and vulcanize a rubber plate, then the making and vulcanizing of such plate by the plaintiff, even if he did the whole of it, would be by license of the company, and a lawful act, and no violation of the injunction; and that the affidavit made by Jeffreys would be necessarily untrue, and if the fact of such authority from Bacon was known to Peck and Jeffreys, then that the affidavit would be known by them to be false, and would be malicious, and without legal justification.

2d.  That if the jury should find that the defendants acted

under direction and by authority of the company, it did not relieve them from the charge of conspiracy; nor would the further fact, if found by the jury, that they acted in good faith and for the purpose of confirming their suspicions with respect to breaches of the injunction in other cases.

3d.   That if the jury should find that the plaintiff had in fact vulcanized the plate for Jeffreys, yet if they should also find that he did so by request and authority of the company, then the affidavit was untrue and an actionable injury for which the defendants would be liable in damages under the third count.

The court did not so charge the jury, but charged them as follows:

"The issue presented is not whether the rights of the Goodyear Dental Vulcanite Company under their patents have been infringed, nor is it whether the plaintiff has been guilty of a violation of some legally granted order of injunction.

"The declaration contains three counts.   The first charges, after setting out the proceedings and injunction obtained by the company in the Circuit Court, that the defendants conspired together to induce the plaintiff to manufacture a set of teeth on hard rubber, with the intent to report the fact to the company, for the purpose of subjecting the plaintiff to punishment, and further, that Jeffreys made an affidavit which was false, and that the defendants, knowing the same to be false, forwarded it to the company in furtherance of the conspiracy.   The second count charges that the defendants maliciously made certain false declarations to the company, to induce them to commence a vexatious suit agaist the plaintiff.   The third count charges the defendants with having made, or caused to be made, a false affidavit, which is set out in the count.   Each of these counts sets forth a good cause of action, and if the allegations of either are sustained, the plaintiff is entitled to a verdict.

"Under the first count the plaintiff claims to have proved that Bacon, the general agent of the company, and these defendants, had a common understanding, and conspired together to do the plaintiff the injury of which he complains,

and it is competent for the plaintiff to bring his action against which he pleases. It is necessary that there should have been two persons, at least, engaged to form a conspiracy, and it is necessary, under this count, for the plaintiff to prove that there was a conspiracy or combination between these defendants. Another material allegation under this count is, that the defendants, in pursuance of such conspiracy, made false representations against the plaintiff by means of the affidavit.

"It is said that if, through the agency of the company, directly or by persons employed by them, the plaintiff was induced to violate the injunction, no court upon the application of the company would be disposed to hold him in contempt or punish him for it. But that is not the question here. It is not whether there was a mere technical violation, or a serious and deliberate one, but was there such a violation as justified the statements of the defendant? If the violation consisted in the vulcanizing process, who conducted that? Who furnished the implements? Who gave the instructions? Who furnished the watch by which to determine how long the plate had been subjected to the process, and the means for determining the amount of heat necessary? He who acts by another acts for himself. His acts, to be sure, may be done in such a way as to induce the court upon a hearing to think that no punishment should be inflicted for them, but were they such as would justify the making of the affidavit? In this connection it may be proper to observe, that these patents having reference to the mode of manufacture as well as to the product of the manufacture, and the injunction being against the manufacture as well as the sale of the article manufactured, it would be as much an infringement of the patent and violation of the injunction to partially prepare the articles and furnish them to another to complete, as if the whole had been finished by the plaintiff himself. If you find a conspiracy by the defendants, and that they did what the allegations of this count assert, your verdict must be for the plaintiff. But if you find that the defendant Peck merely obeyed the instructions of the company in endeavoring to procure evidence as directed by them, and sent that evidence to the company in good faith, the charges

of conspiracy must fail. And so too, if the evidence given by Jeffreys and forwarded to the company by Peck was true, or if the defendants had good reason to believe it was true, there can be no ground for recovery under the first count.

"Under the third count, it is necessary for the plaintiff to prove, and for the jury to find, that the affidavit of Jeffreys was not true in fact; because if it was true in fact there is nothing upon which to predicate the plaintiff's claim. If the plaintiff had been or was in fact violating the injunction, or if the company had reasonable cause to believe he was, the company were justified in using all lawful means to ascertain such fact; and for that purpose it was justifiable for them to send a person to the plaintiff to learn whether he was engaged in using hard rubber.

"And if you shall find that Peck sent his agent in good faith to the plaintiff, for the purpose indicated, and believed the affidavit of Jeffreys to be true when he forwarded the same to the company, he cannot be liable under this third count.

"But if you shall find, that the material allegations in either count are true, then the plaintiff is entitled to a verdict for such damages as you shall find just."

Upon the trial the defendants offered evidence to show, that the company and its agents had reasonable ground to believe that the plaintiff had violated the injunction in various instances, and that by reason of this belief Jeffreys was sent at their request to the plaintiff to learn whether he was engaged in the use of hard rubber, and that the defendants acted in good faith in making and sending the affidavit of Jeffreys upon this request, and were not engaged in any conspiracy to injure the plaintiff. The plaintiff objected to any evidence in support of the defendants' claim to a reasonable belief that the plaintiff had violated the injunction in other instances, on the ground that it was irrelevant to the issue, as not tending to show that the affidavit was true, and claimed that such reasonable belief, even if proved, could be no justification in law for the affidavit, if the latter was not in itself true. But the court over-ruled the objection and admitted the evidence.

The jury returned a verdict for the defendants, and the plaintiff moved for a new trial for error in the rulings and charge of the court.

*H. T. Blake*, with whom were *Turrill* and *E. W. Seymour*, in support of the motion.

*A. P. Hyde*, with whom were *Cothren* and *Andrews*, contra.

PARDEE, J. Upon the application and complaint of H. B. Goodyear and others, owners of certain patents for a new and useful improvement in the manufacture of india-rubber, the United States Circuit Court for the district of Connecticut on the 7th day of December, 1868, enjoined the plaintiff from making or selling any dental plates or other articles made of india-rubber mixed with sulphur.

The patentees, believing that the plaintiff disregarded the injunction, were desirous of knowing whether he still kept in his possession the substance known as vulcanized rubber, which was the subject of one of their patents, and whether he would use or sell it in any manner or under any circumstances, and if so, in what manner and under what circumstances; what he would do and how far he would go in the direction of a violation, if opportunity presented itself to him. They therefore, through Bacon their general agent, and through Peck, one of the defendants, their special agent for this particular matter, sent Jeffreys, the other defendant, to the plaintiff, with instructions to ask him to make for Jeffreys a set of teeth upon a hard rubber plate. This request the plaintiff complied with in the manner set forth in the motion. He delivered the teeth to Jeffreys and received eight dollars therefor. Subsequently Jeffreys made, and Peck sent to the patentees, the affidavit set out in the motion, upon the making and sending of which this action is based.

The case as presented by the motion, taken in connection with facts determined by the jury, does not disclose any initiatory act, in combination or otherwise, on the part of the defendants to induce the patentees to institute proceedings in

the Circuit Court of the United States against the plaintiff. On the contrary the patentees began to seek for the information of their own motion, and their first action was prompted by a suspicion which they already entertained. They subsequently called the defendants to their aid as assistants or agents in obtaining knowledge which might thereafter be of value to them in the protection of their patents, if they should see fit to avail themselves of it.

The plaintiff admits, in substance, that the plate made for Jeffreys was made for him as an ordinary customer and in ignorance of the reason for his application therefor; that he did not then act, or believe that he had any right to act, as licensee of the patentees; that they had not intended to grant, and he had not intended to receive, any such right; and that it was contrary to the will of both parties that the relation of licensor and licensee should exist between them.

And if it be conceded that, by reason of the fact that the patentees asked the defendant Jeffreys to test the intention of the plaintiff, his request of him to make and sell the plate involved an offer on their part to the plaintiff of a permission to do the act, yet the plaintiff being utterly ignorant of such offer, did not then actually accept it by word or deed. The question as to his interest remains unaffected. What he then did was done in furtherance of his intention to sell the plate without paying a royalty thereon.

The case does not call upon us to determine whether for an act performed under such circumstances the court would or would not punish the plaintiff for a violation of the injunction. The patentees, for the better protection of their property, had a right to resort to the method adopted by them of learning whether he had the patented material in his possession and his intention as to the use and sale thereof; and under the circumstances of this case Jeffreys was entitled to the privilege of communicating to them the knowledge thus obtained by him upon these points. And even if we should concede that his communication involved an erroneous conclusion on his part as to the legal consequences which would follow the act of the plaintiff as described in the affidavit, the court

properly submitted to the jury the question as to the malicious intent or the good faith of the defendants in making and sending it to the patentees. The charge falls within the principle laid down in the following cases.

In *Harrison* v. *Bush*, 32 Eng. Law & Eq. R., 173, Lord Campbell, C. J., said: "A communication made bonâ-fide upon any subject matter in which the party communicating has an interest or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable. Duty, in the proposed canon, cannot be confined to legal duties which may be enforced by indictment, action or mandamus, but must include moral and social duties of imperfect obligation."

In *Toogood* v. *Spyring*, 1 Cromp. Mees. & Ros., 193, Parke, B., said: "If communications be fairly warranted by any reasonable occasion or exigency and honestly made, such communications are protected by the common convenience and welfare of society; and the law has not restricted the right to make them within any narrow limits."

In *Coxhead* v. *Richards*, 10 Jurist, 984, Tindal, C. J., said: "I do not find the rule of law so narrowed and restricted by any authority that a person having information materially affecting the interests of another, and honestly communicating it, in the full belief, and with reasonable grounds for the belief, that it is true, will not be excused, though he has no personal interest in the subject matter."

In *Cockayne* v. *Hodgkisson*, 5 Car. & P., 548, Parke, B., said: "I have already said that every willful and unauthorized publication to the injury of the character of another is a libel; but where the writer is acting on any duty, legal or moral, towards the person to whom he writes, or where he has by his situation to protect the interests of another, that which he writes under such circumstances is a privileged communication."

The rule is thus stated by the court in the case of *Lewis & Herrick* v. *Chapman*, 16 N. York, 369: "There is no doubt

that where the communication is made bonâ-fide in answer to
inquiries from one having an interest in the information
sought, or where the relation between the parties by whom
and to whom the communication is made is such as to render
it reasonable and proper that the information should be given,
it will be regarded as privileged."

In the case of *Washburn* v. *Cooke*, 3 Denio, 110, determined
in the Supreme Court of the state of New York, and cited
approvingly in the case of *Lewis & Herrick* v. *Chapman*,
Bronson, C. J., said: "In this case it may be collected from
the evidence given, and from that which was offered and
rejected, that the sheriff had made a levy upon certain cattle
which had afterwards been wrongfully driven away, in conse-
quence of which the sheriff was likely to suffer damage; that
the sheriff thereupon employed the defendant to ascertain and
inform him of the facts in relation to the wrong which had
been done and to advise what course it was best to pursue;
and that the defendant wrote the letter in question to his em-
ployer concerning the subject matter of his employment. It
was the communication of an agent to his principal, touching
the business of his agency, and not going beyond it. The
charge of larceny, of which the plaintiff complains, was
directly pertinent to the matter in hand; and I think the letter
must be regarded as a privileged communication. The occa-
sion upon which it was written sufficiently rebuts the inference
of malice, which under other circumstances would have arisen
from the injurious nature of the charge. In such a case,
although there may be no proof of the truth of the accusation,
and even though it may be shown to be false, the jury are not
to render a verdict for the plaintiff as a matter of course.
They must first be satisfied, on looking at the whole case, that
the defendant did not act honestly and in good faith, but
intended to do a wanton injury to the plaintiff."

In *Bradley* v. *Heath*, 12 Pick., 164, Shaw, C. J., says:
"When words imputing misconduct to another are spoken by
one having a duty to perform, and the words are spoken in
good faith and in the belief that it comes within the discharge
of that duty, or where they are spoken in good faith to those

who have an interest in the communication and a right to know and act upon the facts stated, no presumption of malice arises from the speaking of the words, and therefore no action can be maintained in such case without proof of express malice."

In *Gassett* v. *Gilbert*, 6 Gray, 97, Bigelow, J., says: "A party cannot be held responsible for a statement or publication tending to disparage private character, if it is called for by the ordinary exigencies of social duty, or is necessary and proper to enable him to protect his own interest, or that of another, provided it is made in good faith and without a willful design to defame."

A new trial is not advised.

In this opinion the other judges concurred.