PETER J. LALLY, RESPONDENT, *v.* JONAS A. EMERY, APPELLANT.

*Action for slander — right of a defendant to testify, that in speaking the words he did not intend to charge the plaintiff with the commission of a crime.*

In an action to recover damages for slander the complaint contained two counts:

The first count alleged that the defendant "maliciously spoke concerning the plaintiff the false and defamatory words following: ' Is Lally (meaning plaintiff) getting along well in the hospital corps? Lieutenant Lloyd said to me, "My last dealings with that man (meaning plaintiff) was he was hauled up before a court for committing a rape, or trying to commit a rape."'"

The second count alleged that the defendant maliciously said that the plaintiff had been tried, or had been before a court for committing, or attempting to commit, a rape while a sergeant in the United States army.

It was alleged in each count that the defendant intended by these false and defamatory words to charge that the plaintiff had committed the crime of rape within the Territory of Dakota.

The defendant admitted the use of the words, alleging the commission of the crime, and denied the other allegations of the complaint, and expressly denied any malice, and averred that the words which were admitted to have been spoken were uttered by the defendant, "believing them to be true, without any malice towards the plaintiff, and without any design to do him an injury in his good name or otherwise."

Upon the trial the defendant was asked by his counsel this question: "Upon either of these occasions, when you spoke those words to Delaney, or when you spoke those words to Comegys, did you intend to charge Lally with the crime of rape, or attempt to commit rape?" An objection taken by the plaintiff that that question was incompetent and immaterial was sustained, and the defendant excepted to the decision.

The judge charged, among other things: The evidence is before you to say whether or not "the defendant, in good faith, in the line of his duty, without malice, said what he did, believing it to be true." And further charged: "In a case of this kind the jury have it in their power to give what is called exemplary damages in addition to damages by way of compensation, that is, damages by way of punishment."

*Held*, that the defendant should have been allowed to give in evidence any fact or circumstances tending to disprove malice; that the intent with which the words were uttered was a question of fact for the jury to determine, and the defendant should have been permitted to answer the question put to him and state, if he could, that in the use of the words, which were the foundation of the action, he did not intend to charge the plaintiff with the commission of the crime alleged.

APPEAL from a judgment entered, upon a verdict recovered at the Jefferson Circuit, in the office of the clerk of the county of Jefferson, on the 24th day of December, 1888, in favor of the plaintiff, and from an order denying the defendant's motion, made upon the minutes of the justice presiding at the trial, to set aside the verdict, and for a new trial.

Plaintiff's complaint contains two counts for slander. The first count alleges that the defendant "maliciously spoke concerning the plaintiff, the false and defamatory words following: 'Is Lally (meaning plaintiff) getting along well in the hospital corps? Lieutenant Lloyd said to me, "My last dealings with that man (meaning plaintiff) was he was hauled up before a court for committing a rape, or trying to commit a rape." '" "The plaintiff further alleges that the defendant by said words intended to charge that the plaintiff had been brought before a court for committing a rape or attempting to commit a rape at Fort Randall, Dakota Territory, and to charge that the plaintiff had committed a rape or had attempted to. * * * The defendant intended by said false and defamatory words to charge the said plaintiff with committing a crime against the laws of the United States, against the laws of the Territory of Dakota, and with the intent to charge that the plaintiff had committed an offense which is a crime against the laws of the State of New York." * * *

In the second count the plaintiff stated that "defendant, in the presence and hearing of a number of persons, maliciously spoke concerning the plaintiff the false and defamatory words following: That Lieutenant Lloyd (meaning a lieutenant in the United States army, stationed at Fort Randall, Dakota Territory), said to the defendant that the plaintiff had been tried, or had been before a court, for committing, or attempting to commit, a rape while a sergeant in the United States army; meaning thereby to charge that the plaintiff had committed the crime of rape while a member of the United States army and a sergeant therein, stationed at Fort Randall, Dakota Territory; that defendant intended by said false and defamatory words to charge that the plaintiff had committed the crime of rape within the Territory of Dakota," etc.

Defendant in his answer, among other things, admitted that he used the following words: "Is Lally (meaning plaintiff) getting along

well in the hospital corps? Lieutenant Lloyd said to me, ' My last dealings with that man (meaning plaintiff) was, I was on a court martial that tried him for rape, or attempt to commit rape,' " and the answer denies the other allegations of the complaint, and expressly denies any malice, and avers that the words which were spoken and which are admitted, as already stated, were uttered by the defendant " believing them to be true, without any malice towards the plaintiff, and without any design to do him injury in his good name or otherwise."

After the defendant had been examined as a witness, and cross-examined as to the circumstances under which the words which he has admitted in the answer to have spoken were uttered, and had given the facts and circumstances tending to show that the words were used without any malice, his counsel propounded the following question to him, viz.: " Q. Upon either of these occasions, when you spoke these words to Delaney, or when you spoke these words to Comegys, did you intend to charge Lally with the crime of rape or attempt to commit rape?" Thereupon the plaintiff's counsel objected to that " as incompetent and immaterial." The court sustained the objections and the defendant excepted.

*Peck & McConnell,* for the appellant.

*Hannibal Smith,* for the respondent.

HARDIN, P. J.:

Plaintiff in his complaint charged the defendant with uttering the words, and that he intended by the words " to charge that the plaintiff had committed the crime of rape, or had attempted to." In the course of the charge delivered to the jury, the judge remarked : " It is a question for you to determine whether or not these words, as used especially upon the first occasion, did amount to a charge of crime ; it is a question of their reasonable meaning as used under the circumstances. If you are of the opinion that there was not here, in substance, a charge of crime, the crime of rape, or an attempt to commit rape, why then there would be no basis, as this case stands, for a cause of action. It is claimed here, in the complaint, that the slander consisted, in substance, of a charge of this crime, rape or attempt to commit rape.    *    *    *    And still, upon

the whole case, it will be a matter of evidence whether or not you are satisfied that the defendant, in good faith, in the line of his duty, without malice, said what he believed to be true. * * * The evidence is before you to say whether or not the defendant, in good faith, in the line of his duty, without malice, said what he did, believing it to be true." And after explaining to the jury that they might give compensatory damages, he added, viz. : "And in a case of this kind the jury have it in their power to give what is called exemplary damages in addition to damages by way of compensation ; that is, damages by way of punishment. The jury on that subject should consider the subject fairly. It is in their discretion, if a case is made out, to add to the compensatory damages, damages by way of example." We thus see the motive of the defendant was in issue ; and that the jury were allowed to inquire what was his motive on the occasion of the utterance of the words charged to have been slanderous. It is well settled that a defendant may give in evidence any fact or circumstance tending to disprove malice. (*Bush* v. *Prosser*, 11 N. Y., 347.)

In *Taylor* v. *Church* (4 Seld., 459), in dealing with evidence offered for the purpose of showing the motive of the defendant in procuring a publication, and its admissibility for such purposes, JEWETT, J., said : " It tended to disprove that the defendant was influenced by actual malice to injure the plaintiffs by the publication, and, therefore, pertinent upon the question in respect to the amount of damages to be given beyond a full compensation for the injury by way of punishment or example," and it was held in that case that the exclusion of the evidence was error.

Since the decision in *Seymour* v. *Wilson* (4 Kern., 567), it has been repeatedly held that the motive with which an act was done or words uttered, or an instrument executed may be inquired into by asking of the party perpetrating the act, uttering the words or executing the instrument, what his motive was, and that the real motive may be stated as a fact to be considered in connection with the other evidence. The rule was quite extensively examined in *Pope* v. *Hart* (35 Barb., 636), in a case where a party was charged with an intent to deceive, or cheat or defraud, or with fraud and deceit, and it was resolved that a party " must be allowed to testify as a witness in his own behalf; that he did not intend to cheat, deceive or defraud,

or to practice any fraud or deceit in the transaction wherein he is charged with having had such *motive*, however, inconclusive, unsatisfactory or inconsistent his evidence may be."

The rule was referred to again in *Cortland County* v. *Herkimer County* (44 N. Y., 26), in a case involving an inquiry as to whether a penalty had been incurred or not by certain acts of a party mentioned, and it was said viz. : " Intent is to be judged of usually by the light of surrounding facts and circumstances. These afford a satisfactory test, which all can know and consider as well as the witness. But here the witness speaks of an intent which may be at variance with the surrounding facts and circumstances, and of which none can know but himself." The court added that the case was controlled by *Seymour* v. *Wilson* (*supra*), and followed it.

In *Dillon* v. *Anderson* (43 N. Y., 236) referring to the rule FOLGER, J., says: "That where the doing of the act is not disputed, but is affirmed, and whether the act shall be held valid or invalid hangs upon the intent with which it was done, which intent from its nature would be formed and held without avowal ; there he upon whom the intent is charged may testify whether he secretly held such intent when he did the act."

In *Bayliss* v. *Cockcroft* (81 N. Y., 371) the cases upon the subject were again referred to and reaffirmed, and a ruling which allowed a witness to state the intent with which he received a certificate accompanying a transfer of a note " and that he had no purpose or intent to use it to evade the statute of usury " was upheld. In *Pritchard* v. *Hirt* (39 Hun, 380) the intention with which an act was done was allowed to be stated by the party concerned in the act, and the ruling receiving such evidence was approved by this court. In *Bedell* v. *Chase* (34 N. Y., 386), where the question of good faith of a purchase was involved it was said that the party "may be examined as to the intent with which it was made." And in *More* v. *Deyoe* (22 Hun, 223), in referring to this class of evidence, it was said : " But where the act is equivocal in character, and the intent is directly in issue, it may be ascertained by direct questions, as was sought to be done in this case. Not that the answer would be absolutely conclusive, but it would be an item of admissible evidence." In *Bennett* v. *Smith* (23 Hun, 50) the action was for publishing a

libel concerning the plaintiff, and after the defendant had testified to certain statements made to him by the plaintiff, and given such other information as he had at the time he wrote the article, he was asked "Why did you write it?" and it was held that the court erred in excluding the question "as evidence that he acted in good faith was admissible, not in mitigation of the compensatory, but of the vindictive damages which a jury might award in such a case." We are entirely satisfied with the reasons given for the application of the rule in that case to an action of libel, and we are of the opinion that the same reasons apply in an action of slander.

Inasmuch as the jury were instructed in this case that the intent with which the words were uttered was a question of fact for them to determine, it is evident that the intention of the defendant in uttering the words was a very important question. Whatever may be our views as to the effect upon that question of an answer by the defendant to the question propounded to him, we are persuaded by authority and principle that the defendant should have been permitted to answer and state, if he could, that in the use of the words which are the foundation of the action, he did not intend to charge the plaintiff with the commission of the crime of rape or of the crime of attempted rape.

For the error in excluding an answer to the question we think a new trial should be granted.

MARTIN, J., concurred; MERWIN, J., not sitting.

Judgment and order reversed on the exceptions and a new trial ordered with costs to abide the event.