BURR MATTICE, Respondent, v. HENRY WILCOX, Appellant.

*Libel concerning an attorney and public officer — question of libel and privilege, one for the court — question of doubtful meaning, for the jury — evidence of hearsay opinions in mitigation of damages.*

The complaint in an action of libel, brought by an attorney at law, who had been employed as corporation attorney by the village in which he resided, to recover damages for an alleged libelous circular caused by the defendant, who was a taxpayer of the village, to be printed and distributed among the citizens, taxpayers and others, set out the following paragraph of the circular : "Make Burr Mattice (the plaintiff) attorney for the village, so that every person that gets spanked on the ice will be able to obtain a judgment (of) from $1,000 to $10,000 against the village." On the trial, the court ruled that this paragraph was libelous and not privileged.

*Held,* that this ruling was correct, under the rule that, in a civil action for libel, where the publication is admitted and the words are unambiguous and admit of but one sense, the question of libel or no libel is one of law which the court must decide, and that in such an action it is for the court to determine whether the alleged libel was a privileged communication — the rule being the same where the alleged libelous charge is made against a public officer as such.

The plaintiff had also been a town assessor, and another paragraph of the circular charged to be libelous, was as follows: "Elect Burr Mattice (the plaintiff) and Henry Potter assessors, to put up the valuation so that the trustees can rob the taxpayers on the two per cent levy." The trial judge left it to the jury to determine the meaning of the language used, under instructions which were favorable in many respects to the defendant; the defendant thereafter made certain requests to charge, which were refused.

*Held,* that, as of the requests refused some were not applicable to the case, and others were but to ask a repetition of the substance of what had been delivered to the jury in the body of the charge, to decline such requests was not error.

In such an action, it is not competent for the defendant to testify to hearsay opinions of citizens as to specific acts and conduct of the plaintiff, under the rule which allows evidence of facts and circumstances alleged in the answer by way of mitigation.

APPEAL by the defendant, Henry Wilcox, from a judgment of the Supreme Court, entered in the office of the clerk of Otsego county on the 11th day of June, 1892, upon a verdict in favor of the plaintiff, rendered at the Otsego Circuit, and from an order denying the defendant's motion for a new trial made upon a case containing exceptions.

The action was brought to recover the damages resulting from an alleged libel. The plaintiff recovered a verdict for $1,000.

*F. R. Gilbert* and *C. L. Andrus*, for the appellant.

*Douglass W. Miller*, for the respondent.

HARDIN, P. J. :

In 1890 the plaintiff was a citizen of the village of Oneonta; he was an attorney and counselor of the Supreme Court; he had been employed by the village as corporation attorney, and had had charge of several suits in its behalf; he had for two years prior thereto been an assessor of the town. The defendant was a resident of the village of Oneonta, owning considerable property therein, upon which he paid taxes. He took the manuscript for the circular set out in the pleadings to Sidney, and had 300 copies printed, and when the same were received in the village of Oneonta he distributed them very extensively among the citizens of that locality; many of them to the taxpayers; quite a number of the circulars were placed in the hands, by the defendant, or at his instigation, of persons who were not taxpayers. In the first count of the complaint it is alleged, viz.: "That the defendant, on or about the first day of February, 1890, wickedly and maliciously intending to injure the plaintiff in his good name, credit and fame, and to injure him in his profession and business as an attorney and counselor of this court, and to bring him into disrepute and contempt among all his neighbors and other good and worthy citizens, and to cause it to be believed and suspected by his said neighbors and other citizens, that the plaintiff had been and was guilty of malpractice in the practice of his profession, and was incompetent to properly discharge the important duties of his profession, and especially of his position as attorney and counsel to the board of trustees of the village of Oneonta, and to vex, harass and oppress him, the defendant did on the first day of February aforesaid, at Oneonta, N. Y., falsely, wickedly and maliciously, compose and publish, and cause and procure to be published in handbills (a copy of which is hereto annexed and forms a part of this complaint), and circulated and cause to be circulated extensively in the village of Oneonta and vicinity, of and concerning him, the said plaintiff, a false, scandalous and defamatory libel, containing, among other things, the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the said plaintiff, that is to say: 'Make Burr Mattice attorney

for the village, so that every person that gets spanked on the ice will be able to obtain a judgment from $1,000 to $10,000 against the village,' meaning thereby to charge plaintiff with want of skill and care, as the attorney for the village of Oneonta, in defending certain suits against said village, and meaning to charge thereby and did charge plaintiff with neglect in the care and management of suits against the said village, and with wrongful and dishonest conduct in his professional dealings as the attorney of said village." The language quoted from the circular is known in the circular as the second paragraph. The complaint then proceeds to state that the circular contained another paragraph known as the eighth subdivision of the circular, which is set out in the following language : " Elect Burr Mattice and Henry Potter assessors, to put up the valuation so that the trustees can rob the taxpayers on the two per cent levy." The complaint avers that the defendant intended to charge the plaintiff " with corruptly and dishonestly entering into an unlawful and collusive agreement with the board of trustees of said village to unlawfully and corruptly increase the assessed valuation of the said village, for the purpose of extorting money from the taxpayers of said village, which said libel is false and untrue."

When the defendant's answer was served, the plaintiff interposed a demurrer, which was sustained at Special Term, and the decision made at Special Term was brought before this court, and our decision thereon was made in 1891 ; the opinion delivered on that occasion appears in 36 N. Y. St. Repr. 914 ; in the course of that opinion, we said : " We think the words found in the complaint were libelous within the rule laid down in *Sanderson* v. *Caldwell* (45 N. Y. 398)." An appeal was taken from our decision, and our judgment was affirmed by the Court of Appeals. (See 41 N. Y. St. Repr. 946.)

In *Moore* v. *Francis* (121 N. Y. 202), ANDREWS, J., said : " It is the settled law of this State that in a civil action for libel, where the publication is admitted and the words are unambiguous and admit of but one sense, the question of libel or no libel is one of law which the court must decide." We think that the trial judge properly ruled that the second paragraph taken from the circular was libelous and was not privileged.

In *Hamilton* v. *Eno* (81 N. Y. 116), it was held that, " in an

action for libel, it is for the court to determine whether the alleged libel was a privileged communication;" and it was also held in that case that "the rule is the same where the alleged libelous charge is made against a public officer, as such." In that case, the plaintiff was an assistant sanitary inspector of the board of health of the city of New York, and in that capacity he made a report, and the defendant had written a letter in respect thereto which was published in the *Tribune.* In the course of the opinion delivered in that case, it was said that the report was legitimate subject of criticism, and that the defendant might question "its statements of fact and deny them; he might expose misrepresentations and point out errors; he might combat its reasoning and show its conclusions ill drawn; and he might do so with satire and ridicule, so long as he directed those missiles at the report and the contents of it. But he could not attack the private character of the author; to do so would be libelous. (*Cooper* v. *Stone,* 24 Wend. 442.)" We think that case does not support the contention of the appellant. This case is unlike *Lewis & Herrick* v. *Chapman* (16 N. Y. 369). That was a case where a communication was made by a banker as to the makers of a note, and in the course of the opinion delivered in that case, to the effect that the communication was privileged, the reason given was "because it was made in confidence, to persons directly interested in it, and apparently by way of advice."

In *Ormsby* v. *Douglass* (37 N. Y. 477), the nonsuit was granted "on the ground that the words spoken by the defendant concerning the plaintiff appeared to have been spoken confidentially, in the course of the defendant's employment, to one of his employers, on the application of the latter, who had need of the information for the purpose of governing his discretion in his business, and that, under the circumstances, the communication was not unlawful, there being no evidence of malice or bad faith." The case is quite distinguishable from the one before us. Upon an examination of the whole language found in the circular "it appears to admit of no just construction, except one which is injurious to the plaintiff." Therefore, within the rule laid down in *Lewis & Herrick* v. *Chapman* (16 N. Y. 371), "Its meaning is to be determined by the court." And the court's determination in regard to paragraph No. 2 was not erroneous.

(2) In the eighth paragraph of the circular published by the defendant are found these words: " Elect Burr Mattice and Henry Potter assessors, to put up the valuation so that the trustees can rob the taxpayers on the two per cent levy." In dealing with that branch of the case the trial judge submitted to the jury an inquiry as to the meaning of the words used in the circular. He said : " This is a question of fact as to what it means, left to your judgment and not to mine." He then proceeded to state to the jury that the defendant claimed " that there is no charge against Mr. Mattice in them that would tend to bring him into any discredit or disgrace, or that would tend to lessen the confidence of anybody in him in any way ; in other words, that there is nothing libelous about it ; " and after further comment he added : " Now, if that is all there is to it, if there is no charge against Burr Mattice there at all, if it is simply a statement that if Burr Mattice is elected he is in favor of raising the valuation, and if the valuation ·is raised the iniquitous trustees will avail themselves of the raise to rob the citizens by putting the whole two per cent on them ; if that is all there is to it, there is no charge or libel, no evil intent charged against Burr Mattice." After having made this liberal statement, quite as favorable as the defendant was entitled to have made, he continued and stated the claim of the plaintiff in respect to the language used ; and he left it to the jury to say whether the charge was justified, as well as to determine the meaning of the language used, and instructed the jury that if they found in accordance with the claim and construction put upon the words by the plaintiff, that then the language amounted to a libel ; and after directing their attention to the mitigating circumstances he said : " So far as this second is concerned, if you shall believe it to be a libel, you may, as I said in regard to the first one, not only give such a sum as you believe will compensate the plaintiff for any injury which he sustained by it, but you may give punitive damages. That depends upon the question how far you shall believe that the defendant was inspired with malice in publishing it against Mr. Mattice." Again he adds : "Although the law infers malice from the publication of a libel, yet if, from all the evidence in the case, you shall believe that he was not malicious, the amount of punitive damages which you give against

him should be controlled by just so far as you shall deem his malice to have been great or little. If you gentlemen believe there was no malice, you should not give any punitive damages. If you believe there was much or little, regulate your punitive damages accordingly; but for the damages you believe are a just compensation to this man you will render a verdict as a matter of law without regard to the amount of malice which inspired the defendant." After the delivery of a charge favorable in many of its features to the defendant, numerous requests were made, some of which were not applicable to the case, and some of which were but to ask a repetition of the substance which had been delivered to the jury in the body of the charge; to decline to yield to such requests was not error.

(3) Defendant was examined as a witness in his own behalf upon the trial, and, among other things, testified, viz.: "It was commented upon and talked that these matters were carried on under the advice of the plaintiff; at the time I published this article, I believed in good faith that the course which the village officers were taking in connection with the plaintiff, and under his advice, was resulting injuriously to the taxable inhabitants of the village of Oneonta and town of Oneonta; I had no other motive in publishing the article except for the purpose of guarding and protecting my own interests and the taxpayers' interests in the village and town of Oneonta; I did not intend or desire to injure the plaintiff in any manner whatever; all the motive I had was simply to have those abuses corrected." It is now insisted in behalf of the appellant that an error was committed in excluding an answer to the following question: "Prior to the publication of this article, was the conduct and acts of this plaintiff, as one of the assessors of the town, the subject of general comment among the people?" It is manifest, from the evidence found in the appeal book, that the matters embraced in the question had been the subject of discussion among the citizens of that village. It is difficult, therefore, to see that the defendant suffered anything by the ruling, even if it be assumed that it was technically erroneous. Following that question was another which assumed that comments had been made by the inhabitants of the village, and the witness was asked to state, "was the opinion frequently expressed that he was not a proper person,

under the circumstances, to be thus employed?" Objection was made to the question and sustained. The question was leading, and it called for the opinion of others "in reference to the acts of the plaintiff as counsel for the village;" and if an answer had been given, it is difficult to see how the opinions could furnish a justification of the defendant. While it was competent to show that the general character of the plaintiff was bad, no such attempt, however, was made, and the opinions of citizens as to specific acts, if received, would not establish that his general character was not good, nor would the opinions frequently uttered justify the defendant in publishing the libel complained of. (*Root* v. *King*, 7 Cow. 613; *Gilman* v. *Lowell*, 8 Wend. 573.) Facts and circumstances which tend to disprove malice may be given in evidence. (*Bush* v. *Prosser*, 11 N. Y. 347; *Hatfield* v. *Lasher*, 81 id. 246.) The defendant was allowed to give such facts and circumstances as were set out in his answer by way of mitigation, but the question propounded only called for hearsay opinions, and it is difficult to see how the witness was competent to state hearsay opinions, under the rule allowing facts and circumstances alleged in the answer to mitigate damages.

Appellant calls attention to *Cameron* v. *The Tribune Association* (27 N. Y. St. Repr. 907), which was an action for libel in that the defendant published a dispatch from its Boston agent; there was a discrepancy between the original dispatch received by the agent and the condensed one; the defense was justification, and it was held that evidence of the facts and circumstances which led the agent to fall into the error was competent upon the question of malice and punitive damages. In that case there was a justification and an averment that the plaintiff was a man of bad character, and that the telegram was received from defendant's correspondent in the usual course of business and printed in good faith as an item of news. The case differs essentially from the one before us. Some criticism is made relating to the defendant's good faith or motive in regard to the publication. The defendant in effect answered the questions in that regard in the course of his testimony direct and in cross-examination. At folio 182, he says: "I published it for no other purpose or with no other motive than simply to protect my interests as a taxpayer;" and at folio 190, he says: "I circulated it

without any animosity at that time or vindictiveness against him ; I done it in the interest of the taxpayers and myself ; " and at folio 192, he says : " I had no animosity when I published this article." By the answers quoted the defendant was permitted in effect to state that he published the circular in good faith, and the rule laid down in *Bennett* v. *Smith* (23 Hun, 50), and followed in *Lally* v. *Emory* (28 N. Y. St. Repr. 127), was complied with.

Other rulings are criticised, and we have examined them and are persuaded that the rulings were not prejudicial to the rights of the defendant.

The foregoing views lead us to sustain the verdict taken at the Circuit.

MERWIN, J., concurred ; PARKER, J., not sitting.

Judgment and order affirmed, with costs.